Filed 3/29/16  DeMello v. Lionel CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MARTIN DEMELLO,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>EVAN LIONEL,<br><br>    Defendant and Appellant. | B262766<br><br>(Los Angeles County<br>Super. Ct. No. LS026262) |

APPEAL from an order of the Superior Court of Los Angeles County, Lloyd C. Loomis, Judge.  Affirmed.

Evan Lionel, in pro. per., for Defendant and Appellant.

Leigh Datzker, for Plaintiff and Respondent.

## INTRODUCTION

Appellant Evan Lionel, appearing in propria persona, appeals from the imposition of a civil harassment restraining order. The order directs Lionel to refrain from contacting his former brother-in-law, respondent Martin DeMello (Martin[1]), and Martin's parents, Victoria and Derrick DeMello. Lionel asserts that the superior court judge who entered the restraining order was biased and should have been disqualified from the case. Lionel also argues there was insufficient evidence presented to the superior court to sustain the restraining order. We disagree on both grounds, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Lionel was married to Marion DeMello (Marion), and they have three children together. Martin is Marion's brother, and the children's uncle. Martin and Marion's parents, Victoria and Derrick, are the children's grandparents. Victoria and Derrick are in their 70's and live in India.

A domestic violence restraining order was issued against Lionel in Lionel and Marion's dissolution action. Martin also filed an application for a civil harassment restraining order against Lionel. The application is not included in the record on appeal.

The first document in the record on appeal, dated February 27, 2015, is an ex parte application by Lionel seeking to continue the hearing on Martin's request for a restraining order. In the declaration attached to the application, Lionel stated that he had filed a motion to disqualify Judge Loomis from the case based on Code of Civil Procedure section 170.1.[2] According to the declaration, Lionel believed he could not get a fair hearing with Judge Loomis because Martin's counsel told Lionel, "I know this Judge he is my friend and you will be fucked." The motion is not included in the record on appeal. Lionel's declaration stated that the court had not yet ruled on the motion.

---

[1] Because this case involves several people with the last name DeMello, we will refer to these parties by their first names to avoid confusion. We intend no disrespect.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

On March 2, 2015, Judge Loomis issued a written order striking Lionel's motion for disqualification. The order stated that section 170.3, subdivision (c)(1) requires a party requesting the disqualification of a judge to file a written statement setting out "the facts constituting the grounds for disqualification of the judge." The order stated that Lionel's subjective belief that the judge might be unfair was not sufficient to show bias, because a determination of bias is made based on an objective standard. Judge Loomis included a declaration stating under penalty of perjury that he was not biased in favor or against any party in the case.

On March 3, 2015, the day of the hearing on Martin's request for a restraining order, Lionel filed another motion to disqualify Judge Loomis, arguing, "Under the procedures established by subdivisions (c)(5) and (c)(6) of Sec. 170.3, if the challenged judge elects to contest the statement of disqualification, the matter must be resolved by another judge agreed upon by the parties." In his declaration, Lionel repeated Martin's attorney's alleged statement that he was a friend of Judge Loomis. Lionel also argued that Judge Loomis's decision on a previous ex parte application demonstrated that he was biased against Lionel.

The same day, Judge Loomis issued a written order striking Lionel's motion under section 170.4, subdivision (c)(3), which bars multiple statements of disqualification "unless facts suggesting new grounds for disqualification are first learned of or arise after the first statement of disqualification was filed." Judge Loomis also announced at the beginning of the hearing that the "most recent request [for disqualification] by Mr. Lionel is stricken. And I think the written order has been distributed to the counsel and the parties." Lionel objected that the matter should be heard by a supervising judge; Judge Loomis overruled his objection and proceeded to hear the merits of Martin's request for a restraining order.

Martin testified at the hearing that Lionel sent a number of emails to Victoria, and Victoria forwarded them to Martin. On March 2, 2015 (the day before the hearing), Lionel emailed Victoria stating, "God knows what your family is doing. I have not seen my baby in a year because of your daughter." In another email dated March 2, 2015,

3

Lionel wrote, "Let Martin know that perjury is a felony and he can be sentenced to four years for lying under oath. Leigh Datzker [Martin's attorney] is about to be exposed for perjury, corruption and unethical practices."

In an email on "February 25th,"[3] Lionel stated, "Today was Super Bowl Sunday. I should have been able to watch the game with my son, but I couldn't because of your daughter and her unethical, corrupted attorney's lies. What will you say to God about what you have done to me and our children?" On February 14, 2014, Lionel said in another email, "My mother just turned 79 years old and she has not been allowed to speak to her grandchildren. Surely you must know how wrong this is. When you go before God someday, please know that he will not approve of the wrong that's been done to me, our children and my mother." In an email dated February 25, 2015, Lionel said, "I have not been allowed to see my baby in a year because of your daughter and her unethical attorney's lies and false allegations. When you speak to my baby, tell her that I miss her and I love her always."

In an email dated February 20, 2015, Lionel stated, " I would call [my daughter] my pumpkin. She love [sic] that name until your daughter started her parental alienation tactics against me. I am asking you as a Christian to speak to your daughter and stop her from doing this wrong to me and our children. I have not seen or spoken to my daughter in a year because of your daughter and her corrupt, unethical attorney's lies." In another email on February 20, 2015, Lionel said, "I am not allowed to see or speak with [my son] because of your daughter and her unethical, corrupt attorney's lies. Tell him the truth. Tell him his father loves him, and I will always be here for him. I miss my son." In a third email on February 20, 2015, Lionel wrote, "I am in court tomorrow morning because of Martin requesting a protective order against me. How long do you think Martin and Marion can lie before they get caught and are held by the proper authority? They will be exposed when God says it is time. We are getting pretty close to that time.

---

[3] The testimony does not specify the year, and none of the emails is included in the record on appeal.

4

If you believe in right, tell them to stop doing wrong, and stop lying to the courts to keep me from seeing my children. It is a bad reflection on the entire DeMello family."

Martin testified that the emails caused him emotional distress. He also testified that his mother was upset by the emails. Martin testified that he asked his attorney to send Lionel a cease-and-desist letter; the attorney said he had emailed Lionel two or three cease-and-desist requests in December 2014.[4]

Lionel objected to the admission of the emails at the hearing, stating, "They are true emails, but they are to his mother, not to him. So why would they be evidence of him being harassed?" The court accepted the emails into evidence, acknowledging that Lionel sent them to Victoria in India, and Victoria forwarded them to Martin.

On cross-examination, Martin testified that Lionel had emailed him directly as well. When Lionel asked why Martin had never asked him to stop sending emails, Martin said, "Because I've known you to be unstable and have a violent temper, and I did not -- I thought it better to have no contact with you." Lionel asked Martin to read an email into the record that Lionel sent to Martin on June 17, 2014: "Sunday was Father's Day. I was not allowed to see or speak to my babies because of your sister/daughter's lies. I am sure karma for the wrong she has done and the lies she has told to keep me away from our children will effect [sic] your whole family. God will hold all of you accountable for the wrong she has done to me and our children! If any of you told Derrick happy father's day, all you done [sic] is show how wicked and evil you really are." On re-direct, Martin testified that he has received multiple emails directly from Lionel, and that he considered them to be harassing.

After Martin rested, Lionel began to speak. He talked about how he loved and missed his children, and then asked to read a statement "in closing." Martin's attorney objected, asking whether this was argument or testimony. The court said, "Well, I think he prepared some testimony." The court then allowed Lionel to speak; Lionel discussed

_____

[4] Lionel argues on appeal that he did not know that the attorney, who also is the attorney representing Marion in the dissolution action, was representing Martin at the time he sent the cease-and-desist letters.

5

factual information and made legal arguments. Lionel stated that his purpose for emailing Martin and Victoria was "to bring peace to our family." He pointed out that he "never harmed, threatened, or harassed Martin DeMello or his parents." He argued that because he never threatened the DeMellos and because they had never directly asked him to stop emailing them, there was insufficient evidence of civil harassment.

The court then allowed Martin's attorney to cross-examine Lionel. Lionel acknowledged that as part of the dissolution case he was required to take batterer's classes and anger management classes before he would be allowed to see his children, and that he had not taken those classes yet. He also testified that he had completed a required parenting course. Lionel also admitted that after receiving notice that Martin was seeking a restraining order, he emailed Victoria saying, "Let Martin know that perjury is a felony and that he can be sentenced to four years for lying under oath." He denied that it was an attempt to get a message to Martin.

From the bench, the court granted the request for a restraining order, barring Lionel from contacting Martin, Victoria, or Derrick for three years. It held that although Lionel did not directly threaten Martin, Victoria, or Derrick, the numerous emails were harassing and disturbing to the recipients. The court said it was clear that Lionel intended his messages to be communicated to Martin, as well as Marion, whom Lionel was prohibited from contacting due to the previous restraining order. The court also granted Martin's request to include Victoria and Derrick in the order based on section 527.6, subdivision (c), which allows a trial court to "include other named family or household members" in a restraining order where good cause is shown. The actual restraining order is not included in the record on appeal.

Lionel timely appealed.

## DISCUSSION

Lionel presents two challenges on appeal. First, he argues that the trial court erred by striking his motion to disqualify Judge Loomis. Second, he argues that the trial court erred by granting Martin's request for a restraining order.

6

### A.    Disqualification of Judge Loomis

Lionel argues that "Judge Lloyd Loomis violated his Code of Ethics when he did not transfer the case to another Courtroom or Courthouse" when Lionel questioned his relationship with Martin's attorney.  It is unclear whether Lionel is challenging the court's ruling on the motion for disqualification Lionel said he filed on February 18, 2015, which is not included with record on appeal, or the motion for disqualification filed on March 3, 2015, which is in the record.

In either case, a determination regarding the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate.  (§ 170.3, subd. (d).)  "'Under our statutory scheme, a petition for writ of mandate is the exclusive method for obtaining review of a denial of a judicial qualification motion.' [Citation.]" (*People v. Freeman* (2010) 47 Cal.4th 993, 1000.)  We therefore may not review Lionel's challenge to Judge Loomis's disqualification orders on appeal.[5]

Even if Lionel could challenge the disqualification orders on appeal, he has not met his burden to show that the trial court erred by striking his motions.  A party who asserts that a judge should be disqualified must file "a written verified statement objecting to the hearing or trial before the judge and setting forth the facts constituting the grounds for disqualification of the judge." (§ 170.3, subd. (c)(1).)  As Lionel points out, section 170.3, subdivision (c)(5) provides that if the statement of disqualification raises an appropriate issue of fact as to the judge's bias or prejudice, the judge is without power to pass upon the question of his or her own disqualification; the question must be determined by another judge.  However, notwithstanding the statutory prohibition against passing on his or her own disqualification, a judge may strike a statement of disqualification if "on its face it discloses no legal grounds for disqualification." (§ 170.4, subd. (b).)

---

[5] Lionel also filed a petition for writ of mandate challenging Judge Loomis's decision on Lionel's motions to disqualify him.  This Court denied the petition on July 17, 2015. (*Lionel v. Superior Court* (July 17, 2015, B262661) [nonpub order].)

Here, the trial court struck Lionel's first motion to disqualify Judge Loomis because, according to the court, "on its face, and as a matter of law, it does not present lawful grounds for disqualification." This was an appropriate ground upon which the court could strike the motion under section 170.4, subdivision (b). As Lionel has not included his original motion in the record, he has not demonstrated that the trial court erred.

The trial court struck Lionel's second motion for disqualification because it was based on the same grounds as the first. Although Lionel has not included the first motion to disqualify in the record on appeal, in a declaration relating to an ex parte application, Lionel stated that the motion was based on Martin's attorney's statement informing Lionel that he was a friend of Judge Loomis and that as a result, Lionel would not get a fair hearing. Lionel's second motion to disqualify Judge Loomis was based on the same statement by Martin's counsel. Section 170.4, subdivision (c)(3) allows such motions to be stricken by the court: "Repetitive statements of disqualification not alleging facts suggesting new grounds for disqualification shall be stricken by the judge against whom they are filed." Because he has not demonstrated on appeal that the second motion presented new grounds for disqualification, Lionel has not demonstrated that the trial court's ruling was incorrect under section 170.4, subdivision (c)(3). A fundamental rule of appellate law is that the trial court's decision is presumed correct, and it is the appellant's burden to affirmatively demonstrate error. (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) Lionel has not met that burden here.

Lionel also argues that the conduct of the hearing demonstrates that Judge Loomis was biased against him. According to Lionel, Judge Loomis "violated his Code of Ethics," thereby demonstrating prejudice, when he took judicial notice of certain documents from the dissolution case and allowed Martin's counsel to cross-examine Lionel "after both sides had clearly rested their case." A trial court's rulings against a party, however, do not establish judicial bias. (*People v. Pearson* (2013) 56 Cal.4th 393, 447.)

8

Moreover, Lionel has not established that the trial court's rulings were erroneous or otherwise unwarranted under the circumstances. Judicial notice of two orders in the dissolution case was appropriate under Evidence Code section 452, subdivision (d), which allows judicial notice of the records of any California court. Lionel argued that the court "completely ignor[ed] Evan Lionel's written opposition to taking Judicial Notice of two court orders," but the trial court specifically acknowledged Lionel's objection to admission of the court orders, and overruled the objection. In addition, the cross-examination of Lionel was not error. Because Lionel was representing himself, the line between testimony and legal argument was blurred. The trial court appropriately allowed Lionel to speak on his own behalf, and Lionel discussed both factual issues and legal arguments. After Lionel finished, Martin's attorney was permitted to cross-examine him on the factual issues relevant to the case. A trial court has broad inherent and statutory discretion to control the proceedings, including the interrogation of witnesses, to ensure the efficacious administration of justice. (*People v. Chenault* (2014) 227 Cal.App.4th 1503, 1514; Evid. Code, § 765.) Lionel has not demonstrated that the trial court abused that broad authority by allowing cross-examination, nor has he shown that a more favorable result would have been reached had the hearing proceeded differently. (See *In re J.S.* (2011) 196 Cal.App.4th 1069, 1078 ["Reversal is justified 'only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citations.]"].) The trial court's judicial notice of the dissolution case court orders and the cross-examination of Lionel therefore do not demonstrate that Judge Loomis was biased or that reversal is warranted.

### B.     Civil Harassment Restraining Order

Lionel also argues that there was no substantial evidence to support the trial court's imposition of a restraining order. According to Lionel, Martin never asked Lionel to stop emailing him, and Lionel never directly threatened Martin or his parents. Therefore, Lionel argues, the court's civil harassment restraining order was not supported by substantial evidence.

9

Civil harassment restraining orders "issued under Code of Civil Procedure sections 527.6 and 527.8 . . . are reviewed to determine whether the necessary factual findings are supported by substantial evidence. [Citations.]" (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137.) "'Substantial evidence' is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) "The testimony of one witness may provide substantial evidence." (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767-68.)

The definition of "harassment" includes "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner." (§ 527.6, subd. (b)(3).) "If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (§ 527.6, subd. (i).)

Here, the trial court's ruling is supported by substantial evidence. Martin read multiple emails into the record showing that Lionel sent angry, accusatory emails to Victoria, and at least one email directly to Martin. In the emails Lionel accused Martin and his attorney of lying and committing crimes, accused the family of assisting Marion in keeping his children away from him, told Victoria to give messages to people Lionel was barred from contacting directly, and purported to invoke the wrath of God. Martin explained that he was uncomfortable directly asking Lionel to stop sending emails, because he knew Lionel to "be unstable and have a violent temper." Martin testified that he was emotionally distressed by the emails, and that Victoria was also upset by the emails. Martin's testimony constituted substantial evidence sufficient to support the trial court's finding that Lionel's actions alarmed, annoyed, and harassed Martin and Victoria.

Lionel focuses heavily on his own perspective in considering whether the emails were harassing, saying that he only wanted to encourage the family to intervene on behalf of his children, and that he did not know that Martin or Victoria wanted the emails to

10

stop.  But the standard relating to harassment does not depend on the subjective intent of the alleged harasser, other than requiring "a knowing and willful course of conduct." (§ 527.6, subd. (b)(3).)  Rather, the statute requires the trial court to consider whether the conduct objectively "would cause a reasonable person to suffer substantial emotional distress," and whether it subjectively "actually cause[d] substantial emotional distress to the petitioner." (*Ibid*.)  Lionel's knowledge and subjective intent are irrelevant for purposes of determining whether substantial evidence supported the trial court's decision that the emails constituted harassment under section 527.6.

Martin's testimony therefore constitutes substantial evidence sufficient to support the trial court's imposition of a civil harassment restraining order, and Lionel has not demonstrated that the trial court erred by imposing the order.[6]

## DISPOSITION

The civil harassment restraining order is affirmed.  Respondent is entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

---

[6] In the concluding sections of his briefs, Lionel also requests that we reverse the trial court's award of attorney fees to Martin.  Lionel's notice of appeal only included the order of March 3, 2015, not the fee award, dated March 13, 2015.  Moreover, Lionel has provided no citation to the record, argument, or legal citations that would support reversal of the attorney fees.  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

11