Filed 9/21/22  LaMonica v. LaMonica CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| LAWRENCE LAMONICA,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>MICHELLE LAMONICA,<br><br>  Defendant and Appellant. | 2d Civil No. B317131<br>(Super. Ct. No. 56-2021-00559187-CU-PT-VTA)<br>(Ventura County) |

Michelle LaMonica (Michelle) appeals from the judgment after the trial court granted Lawrence LaMonica's (Lawrence)[1] request for a restraining order pursuant to the Elder Abuse and Dependent Adult Civil Protection Act.  (Welf. & Inst. Code,[2] § 15600 et seq.)  We affirm.

---

[1] We refer to the parties by their first names to avoid confusion.  No disrespect is intended.

[2] Further unspecified statutory references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL HISTORY

Lawrence and M.L. have been married for over 60 years. They are 86 years old and 83 years old, respectively. Michelle is the daughter of Lawrence and M.L.

In October 2021, Lawrence petitioned for a restraining order against Michelle, protecting him and M.L. Lawrence filed a supporting declaration, in which he listed several alleged incidents of elder abuse by Michelle, including that she stole from them, "kidnapped" M.L., called the police on him multiple times, and showed up uninvited at his home "yelling and screaming" at him. Lawrence declared that he had previously filed a restraining order against Michelle in May 2020, and they stipulated to an agreement. Michelle agreed to not contact M.L. and to stay away from Lawrence and M.L.'s residence, unless the contact was approved by Lawrence. The agreement was set to expire in December 2022.

Lawrence declared that in August 2021, Michelle violated the stay away order, "abducted" M.L. from his home, and took M.L. to her home in Northern California. During this time, Michelle had M.L., who suffered from dementia, execute a power of attorney authorizing Michelle to act on M.L.'s behalf. Michelle then attempted to file a restraining order, which was denied. A few months later, Michelle went to Lawrence's home without notice and attempted to fire M.L.'s caregiver, Eunice Lopez.

The day before the court trial, Michelle filed evidentiary objections to Lawrence's declaration, moved to strike portions of his declaration, and moved for a nonsuit. The trial court ruled that Michelle's evidentiary objections and supporting declarations were untimely.

On the day of trial, Lawrence submitted exhibits and a proposed witness list, which included Lawrence and Lopez as witnesses. Lawrence made an offer of proof as to Lopez's testimony. Michelle objected, arguing that she never received a witness list or statement regarding Lopez's testimony. Lawrence responded that he did not send her a witness list because Michelle said she would not appear at the trial and he "was just going to prove it up" at trial.

The trial court noted that it "did not order the parties to obtain witness lists in advance of this hearing today." The court further observed that Lopez "was referred to fairly extensively in Mr. LaMonica's request [for a restraining order]."

With respect to the trial exhibits, the court acknowledged that Lawrence did not exchange exhibits with Michelle, but it gave Michelle the option of proceeding with the trial if she waived the objection to timeliness of the exhibits. The court advised Michelle that she had "options." The court advised: "If you feel like you can take a look at what [counsel] intends to offer in the next 30 minutes, we can take a break to see if you're willing to look at that and proceed notwithstanding the fact you did not have it a week in advance."

Lawrence then exchanged the exhibits with Michelle. After receiving the exhibits, Michelle told the trial judge, "We can proceed," and waived objection to the timeliness of the exhibits.

Lawrence and Lopez testified at trial. Lawrence testified to the incidents of elder abuse mentioned in his declaration. Lopez testified regarding an incident where she was awoken at 3:00 a.m. and found Michelle outside Lawrence's home. She also testified about another incident when Michelle called the police and took M.L. from Lawrence's home.

Michelle cross-examined both witnesses. She also testified and was given the opportunity to present a closing argument. The court also asked her several questions.

At the conclusion of trial, the court granted the three-year restraining order against Michelle. The court found that Lawrence's testimony "seemed credible and [it] question[ed] the credibility of the information that [Michelle] presented." The court stated: "You took your mom to Northern California without permission. Necessitating your father to hire a private investigator. You didn't return anyone's calls. And you cannot do that. And all of that . . . you're causing your father a great deal of emotional distress and mental suffering which is what the code is written for to prevent." The court also found that Michelle "abducted" M.L.

## DISCUSSION

### *Evidentiary objections to Lawrence's declaration*

Michelle argues the trial court erred when it ruled that her evidentiary objections to Lawrence's declaration were untimely and when it failed to rule on her motion to strike and for a nonsuit. These arguments lack merit.

Pursuant to California Rules of Court, rule 5.111, objections to a declaration must be filed "at least 2 court days before the time of the hearing, or any objection will be considered waived, and the declaration may be considered as evidence."[3] Michelle did not file her objections until one day before trial. Therefore, her objections were untimely.

---

[3] California Rules of Court, rule 5.111 applies to family law matters, including requests for elder abuse restraining orders. (Super. Ct. Ventura County, Local Rules, rule 9.01.)

Moreover, the court ruled on the admissibility of statements in Lawrence's declaration. Before trial, Michelle orally objected to the declaration on the grounds that the declaration was vague, lacked foundation, and was based on hearsay. The court responded: "We have no jury here. So I'm the decider of both the facts and applying the law. So I will only consider that which is relevant and admissible." We presume the court did so. (Evid. Code, § 664.)

Furthermore, Lawrence testified about the incidents discussed in his declaration. During Lawrence's direct examination, Michelle was not prevented from raising her objections. In fact, Michelle raised some objections to his testimony, and the court ruled on each objection. There was no error regarding the evidentiary objections.

*Lopez testimony*

To the extent Michelle argues that the trial court erred when it allowed Lopez to testify at trial, there was no error.

Michelle argues she had no notice of Lopez's testimony nor had an opportunity to prepare for it. However, Lawrence did not exchange a witness list with Michelle because he relied upon her representation that she would not appear at trial. Moreover, the trial court did not order an exchange of witness lists before the trial.

Michelle also argues that Lopez's testimony was inadmissible because it was hearsay. Michelle could have raised a hearsay objection but failed to do so. (See *Roe v. Halbig* (2018) 29 Cal.App.5th 286, 309-310 [failure to object on hearsay grounds at trial forfeits the argument on appeal].) Michelle also had the opportunity to cross-examine Lopez's testimony. There was no error in admitting Lopez's testimony.

*Ruling on the restraining order*

Michelle contends the trial court erred in granting the restraining order based upon a finding of elder abuse. We disagree.

Elder abuse includes "[p]hysical abuse, neglect, abandonment, isolation, *abduction*, or other treatment with resulting physical harm or pain or *mental suffering*," "deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering," and "[f]inancial abuse." (§ 15610.07, italics added.) "Mental suffering" means "fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, harassment, or by deceptive acts performed or false or misleading statements made with malicious intent to agitate, confuse, frighten, or cause severe depression or serious emotional distress of the elder or dependent adult." (§ 15610.53.)

We review such protective orders for abuse of discretion and factual findings necessary to support the order are reviewed for substantial evidence. (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137.) We resolve all conflicts in the evidence in favor of the prevailing party and construe all legitimate and reasonable inferences in favor of upholding the trial court's findings. (*Id.* at pp. 1137-1138.)

Here, the trial court found that Michelle inflicted "emotional distress" and "mental suffering" on Lawrence, and "abducted" M.L. Substantial evidence supports these findings. Lawrence and Lopez testified to instances when Michelle abducted M.L. from their home, even after Michelle stipulated to a stay away order. Lawrence and Lopez also testified to other incidents of Michelle's abusive behaviors, such as several

6

instances when she showed up at Lawrence's home without permission and when she called the police on them. Based on these factual findings, there was no abuse of discretion in granting the restraining order.

*Self-represented litigant*

Michelle argues the trial court erred by refusing to assist her, a self-represented litigant, and deprived her of a fair trial by "misleading" her and "push[ing her] toward a procedural default." This argument lacks merit.

"[S]elf-represented litigants are not entitled to special exemptions from procedural rules" and are "'entitled to treatment equal to that of a represented party.'" (*Nuño v. California State University, Bakersfield* (2020) 47 Cal.App.5th 799, 812.) However, trial judges "'must acknowledge that in propria persona litigants often do not have an attorney's level of knowledge about the legal system and are more prone to misunderstanding the court's requirements. . . . The judge should monitor to ensure the in propria persona litigant is not inadvertently misled, either by the represented party or by the court. While attorneys and judges commonly speak (and often write) in legal shorthand, when an in propria persona litigant is involved, special care should be used to make sure that verbal instructions given in court and written notices are clear and understandable by a layperson. . . .' [Citation.]" (*Ibid.*)

Here, the record reflects the court gave clear and understandable instructions regarding trial procedure, allowed Michelle the opportunity to look over trial exhibits, and allowed her to present and argue her case. Nothing in the record shows that Michelle was misled or deprived of a fair trial.

DISPOSITION

The judgment is affirmed.  Respondent shall recover costs on appeal.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


PERREN, J.*

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8

Charmaine H. Buehner, Judge

Superior Court County of Ventura

_____

Michelle LaMonica, in pro. per., for Defendant and Appellant.

Rosen & Loeb and John T. Medlen for Plaintiff and Respondent.