[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1154 
OPINION
 INTRODUCTION
Ove Nielsen appeals from a protective order issued against him under the Elder Abuse and Dependent Adult Civil Protection Act (Welf. Inst. Code, § 15600 et seq.) (Elder Abuse Act). (All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.) In a case of first impression, we hold: (1) protective orders issued under the Elder Abuse Act are reviewed for abuse of discretion, and the factual findings underpinning such protective orders are reviewed for substantial evidence; (2) protective orders under the Elder Abuse Act require proof by a preponderance of the evidence of a past act or acts of elder abuse; (3) in this case, there was substantial evidence of Nielsen's past acts toward Rubalee Bookout, which constituted abusive, threatening, and harassing behavior resulting in mental suffering; and (4) the trial court did not abuse its discretion in issuing the protective order. Nielsen's argument that Bookout's request for a protective order was an abuse of process was never raised in the trial court, and is not properly before us on appeal. We affirm the protective order.
 STATEMENT OF FACTS AND PROCEDURAL HISTORY
Seventy-eight-year-old Bookout met 70-year-old Nielsen in December 2005. At the time, Nielsen was living on a boat in Dana Point and storing his *Page 1155 
personal property in someone else's garage. He told Bookout he was looking for a room to rent, and Bookout agreed to rent a room to him in her mobilehome in San Juan Capistrano for $300 a month starting in January 2006. After two months, Bookout stopped charging him rent in exchange for performing work and repairs on the mobilehome and surrounding property. In April, Bookout and Nielsen moved into a residence together in Laguna Woods. They took title to the residence in joint tenancy, although Bookout paid the full purchase price of $155,000. Bookout testified Nielsen's name was listed on the title only because his monthly income was used to meet Laguna Woods's income requirements.
Bookout filed a civil action against Nielsen on July 20, 2006, seeking to quiet title to the Laguna Woods residence and for fraud, financial elder abuse, breach of an oral agreement, declaratory relief, and constructive trust.
On July 26, 2006, Bookout filed a petition for a protective order under section 15657.03 of the Elder Abuse Act, seeking to have Nielsen excluded from the Laguna Woods residence. In the petition, Bookout declared: "The person to be restrained is a cohabitant/acquaintance of [Bookout] who is currently on title to a stock cooperative in Leisure World as a joint tenant, due to his deceit, undue influence and fraud upon [Bookout]. [Nielsen] paid no part of the purchase price and has paid no rent. After learning of his true intentions, [Bookout] has asked him to leave and return title of the co-op to her, but he has and continues to refuse. In addition to the financial abuse in having his name put on title, [Nielsen] continues to provoke, intimidate and cause emotional and mental pain and suffering on [Bookout]. (1) [Nielsen] has and continues to threaten [Bookout] that she should `give up' the fight over the property as she is weak and will suffer a stroke and would die from his provocations; (2) [Nielsen] has also engaged in various and numerous random acts of provocation, including intentionally locking [Bookout] out of her Property; (3) calling the police alleging that [Bookout] threatened him with a barbecue fork; (4) placing large packing boxes in the living quarters for no reason other than to provoke [Bookout]; (5) placing his personal belongings in places reserved by [Bookout] and to [Bookout]'s exclusion; (6) placing light bulbs behind sofa pillows; (7) putting screws into and rigging kitchen cabinets such that a special tool is required to open the cabinets, depriving [Bookout] access; and (8) continually trying to tape record anything said by [Bookout] without her consent or permission. . . . [Nielsen] has focused bright lights on [Bookout]'s bedroom door, and any *Page 1156 
time she comes out is taking pictures of her. [Nielsen]'s continued [harass]ment, provocation, intimidation and infliction of mental emotional suffering is harmful to [Bookout]'s health and well being and has precluded her from her own residence purchased with her own money."
A temporary restraining order was granted requiring Nielsen to move out of the Laguna Woods residence and preventing Nielsen from directly or indirectly contacting Bookout until the hearing on the section 15657.03 protective order. In his response to Bookout's petition, Nielsen argued Bookout had no right to relief under the Elder Abuse Act, and had not met her burden of proof under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) (DVPA). In a declaration submitted with his response, Nielsen denied intentionally locking Bookout out of the residence. Nielsen declared, "I have never assaulted or threatened to assault [Bookout], and I have never committed any physical or emotional harm against her." Nielsen's declaration did not refute any of the other allegations in Bookout's petition.
The trial court conducted a hearing at which both parties testified.[1]
We summarize their testimony as follows.
Even before Bookout and Nielsen moved to Laguna Woods, there had been problems between them. Bookout testified she asked Nielsen to leave her mobilehome after he began "shaking his fists" in her face and telling her to find a new house. She later asked him to move back in.
The problems continued after Bookout and Nielsen moved to Laguna Woods. Nielsen moved Bookout's personal property into a storage facility and demanded $25,000 to tell her where the storage unit was located. Nielsen admittedly screwed a number of kitchen cabinets closed, although he claimed it was to prevent Bookout from emptying his things out of them. Nielsen also admitted carrying around a tape recorder and trying to record Bookout; she claimed he tried to provoke her into saying something incriminating. Nielsen placed lightbulbs under a cushion on the couch, took Bookout's things out of her room and placed them in the living room, and locked Bookout out of the house when she took her dog for a walk. Bookout testified Nielsen asked her, "why don't you quit? . . . I'm going to provoke you until you die. You're *Page 1157 
dead." Although Bookout called the police several times saying Nielsen threatened her or caused her emotional distress or physical harm, Bookout said the police told her they could not assist her because Nielsen was listed as a joint owner of the property.
After Bookout filed the civil action, Nielsen held a bright light in his hand, and took pictures of Bookout as she came out of her bedroom. Nielsen claimed he was taking pictures of the mess Bookout had made of the residence, not of her.
At the conclusion of the hearing, the trial court stated: "If I don't have an elder abuse case, I'm going to have one within a month. They are going to be in and are going to get in a physical fight. They hate one another. They can't stand one another's guts anymore. [¶] If we have them living in the same house, locking up cabinets, keeping things from one another. Locking one another out of the unit when the one's out taking the dog for a walk. That kind of thing. We can't have elderly people going through that kind of stress in their lives. . . . [¶] So certainly I have two elderly people, both of them at risk living in this environment. This is a bloody war. How would you like to be 80 years old living like that? [¶] . . . [¶] . . . That is elder abuse."
The trial court issued a protective order on August 18, 2006, prohibiting Nielsen from (1) residing in or returning to the Laguna Woods residence; (2) coming within 100 yards of Bookout or the Laguna Woods residence; (3) abusing, intimidating, molesting, attacking, striking, stalking, sexually assaulting, battering, harassing, destroying the personal property of, or disturbing the peace of Bookout; and (4) telephoning or directly or indirectly contacting Bookout. In its minute order, the court found, "acts of elder abuse have occurred between the parties and that [Nielsen] is the perpetrator, [Bookout] is the victim and that the violence did not occur in self-defense." Nielsen timely appealed from the protective order.
 THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ISSUING THE PROTECTIVE ORDER. I. STANDARD OF REVIEW.
The Elder Abuse Act does not specify the standard of review to apply when reviewing protective orders granted under section 15657.03. That statute includes the following language: "An order may be issued under this *Page 1158 
section, with or without notice, to restrain any person for the purpose of preventing a recurrence of abuse, if an affidavit shows, to thesatisfaction of the court, reasonable proof of a past act or acts of abuse of the petitioning elder or dependent adult." (§ 15657.03, subd. (c), italics added.) The "to the satisfaction of the court" language is identical to language in the DVPA.[2] In Quintana v. Guijosa (2003)107 Cal.App.4th 1077, 1079 [132 Cal.Rptr.2d 538], the appellate court concluded issuance or failure to issue a protective order under the DVPA is reviewed for abuse of discretion. A protective order under the DVPA is also reviewed to determine whether the trial court's findings are supported by substantial evidence. (Sabbah v. Sabbah (2007)151 Cal.App.4th 818, 822-823 [60 Cal.Rptr.3d 175].) Similarly, injunctions issued under Code of Civil Procedure sections 527.6 and 527.8, which prohibit civil harassment, are reviewed to determine whether the necessary factual findings are supported by substantial evidence. (USS-Posco Industries v. Edwards (2003) 111 Cal.App.4th 436, 444 [4 Cal.Rptr.3d 54]; Schild v. Rubin (1991) 232 Cal.App.3d 755, 762 [283 Cal.Rptr. 533].)
In our interpretation of the Elder Abuse Act, and in consideration of analogous statutory language and cases interpreting that language, we hold the issuance of a protective order under the Elder Abuse Act is reviewed for abuse of direction, and the factual findings necessary to support such a protective order are reviewed under the substantial evidence test.
We resolve all conflicts in the evidence in favor of respondent, the prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings. (In re Marriage of Bonds
(2000) 24 Cal.4th 1, 31 [99 Cal.Rptr.2d 252, 5 P.3d 815].) Declarations favoring the prevailing party's contentions are deemed to establish the facts stated in the declarations, as well as all facts which may reasonably be inferred from the declarations; if there is a substantial conflict in the facts included in the competing declarations, the trial court's determination of the controverted facts will not be disturbed on appeal. (Bolkiah v. Superior Court (1999) 74 Cal.App.4th 984, 1000 [88 Cal.Rptr.2d 540].) *Page 1159 
In this case, the trial court stated on the record that it was making its findings by clear and convincing evidence. Section 15657.03 does not require findings to be made by clear and convincing evidence; therefore, a preponderance of the evidence is sufficient. (Evid. Code, § 115.)[3]
The Los Angeles County Public Defender has requested that we reconsider our opinion in this regard, and conclude instead that the clear and convincing standard applies. We reject this request for three reasons in addition to our reliance on Evidence Code section 115.
First, although section 15657.03 does not specify a burden of proof, section 15657 permits the recovery of attorney fees and costs and eliminates the limitations on damages imposed by Code of Civil Procedure section 377.34 if physical abuse or neglect of an elder is "proven by clear and convincing evidence." When the Legislature specifies the clear and convincing evidence standard of proof applies in one statute, and omits such a standard from another statute in the same chapter and article, we presume the Legislature did not intend the clear and convincing evidence standard to apply in the latter statute. (In re Manolito L. (2001) 90 Cal.App.4th 753, 761-762.)
Second, the Los Angeles County Public Defender urges us to apply a heightened burden of proof to claims under section 15657.03 to make proof required under that statute consistent with the proof required under other statutes prohibiting harassment. The Public Defender does not identify the statutes to which he refers. Assuming the Public Defender is referring to Code of Civil Procedure sections 527.6 and 527.8, those statutes expressly specify the heightened clear and convincing standard of proof applies, which distinguishes them from section 15657.03. (See Code Civ. Proc. §§ 527.6, subd. (d), 527.8, subd. (f).)
Third, the Public Defender relies on People v. Englebrecht (2001)88 Cal.App.4th 1236, 1255-1256, in which the appellate court held the judiciary may determine a heightened standard of proof applies when it considers both "constitutional due process and more general public policy considerations." (Citations and footnote omitted.) As that court noted, "`The degree of burden of proof applied in a particular situation is an expression of the degree of confidence society wishes to require of the resolution of a question of fact. [Citation.] The burden of proof thus serves to allocate the risk of error between the parties, and varies in proportion to the gravity of the consequences of an erroneous resolution. [Citations.] Preponderance of the evidence results in the roughly equal sharing of the risk of error. [Citation.] To impose any higher burden of proof demonstrates a preference for one side's interests. [Citation.] Generally, facts are subject to a higher burden of proof only where particularly important individual interests or rights are at stake; even severe civil sanctions not implicating such interests or rights do not require a higher burden of proof. [Citations.]'" (Id. at pp. 1253-1254.)
Here, the public policy interest as articulated by the Legislature favors application of the preponderance of the evidence standard, not the clear and convincing standard. In enacting the Elder Abuse Act, the Legislature fully identified the goals and purposes of the Act as follows: "(a) The Legislature recognizes that elders and dependent adults may be subjected to abuse, neglect, or abandonment and that this state has a responsibility to protect these persons. ¶ (b) The Legislature further recognizes that a significant number of these persons are elderly. The Legislature desires to direct special attention to the needs and problems of elderly persons, recognizing that these persons constitute a significant and identifiable segment of the population and that they are more subject to risks of abuse, neglect, and abandonment. ¶ (c) The Legislature further recognizes that a significant number of these persons have developmental disabilities and that mental and verbal limitations often leave them vulnerable to abuse and incapable of asking for help and protection. ¶ (d) The Legislature recognizes that most elders and dependent adults who are at the greatest risk of abuse, neglect, or abandonment by their families or caretakers suffer physical impairments and other poor health that place them in a dependent and vulnerable position. ¶ (e) The Legislature further recognizes that factors which contribute to abuse, neglect, or abandonment of elders and dependent adults are economic instability of the family, resentment of caretaker responsibilities, stress on the caretaker, and abuse by the caretaker of drugs or alcohol. ¶ (f) The Legislature declares that this state shall foster and promote community services for the economic, social, and personal well being of its citizens in order to protect those persons described in this section. ¶ (g) The Legislature further declares that uniform state guidelines, which specify when county adult protective service agencies are to investigate allegations of abuse of elders and dependent adults and the appropriate role of local law enforcement is necessary in order to ensure that a minimum level of protection is provided to elders and dependent adults in each county. ¶ (h) The Legislature further finds and declares that infirm elderly persons and dependent adults are a disadvantaged class, that cases of abuse of these persons are seldom prosecuted as criminal matters, and few civil cases are brought in connection with this abuse due to problems of proof, court delays, and the lack of incentives to prosecute these suits. ¶ (i) Therefore, it is the intent of the Legislature in enacting this chapter to provide that adult protective services agencies, local long-term care ombudsman programs, and local law enforcement agencies shall receive referrals or complaints from public or private agencies, from any mandated reporter submitting reports pursuant to Section 15630, or from any other source having reasonable cause to know that the welfare of an elder or dependent adult is endangered, and shall take any actions considered necessary to protect the elder or dependent adult and correct the situation and ensure the individual's safety. ¶ (j) It is the further intent of the Legislature in adding Article 8.5 (commencing with Section 15657) to this chapter to enable interested persons to engage attorneys to take up the cause of abused elderly persons and dependent adults." (§ 15600.)
Given these reasons set forth by the Legislature, it would be inappropriate for this court to provide less protection for the elderly and dependent adults and to make it harder to obtain relief under section 15657.03 than otherwise provided by the statutory scheme.
In considering whether the trial court's findings are supported by substantial evidence, we review the record as if the court had made its findings based on a preponderance of the evidence standard.
In reviewing the issuance of a restraining order, we will only find an abuse of discretion when the trial court exceeds the bounds of reason or disregards the uncontradicted evidence. The party challenging the issuance of the order bears the burden of showing an abuse of discretion by the trial court. (Biosense Webster, Inc. v. Superior Court (2006)135 Cal.App.4th 827, 834 [37 Cal.Rptr.3d 759]; see IT Corp. v.County of Imperial (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].)
 II. SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FACTUAL FINDINGS.
Subdivision (c) of section 15657.03 permits a trial court to issue a protective order "for the purpose of preventing a recurrence of abuse, if an affidavit shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse of the petitioning elder."
An "elder" is defined as a California resident, age 65 years or older. (§ 15610.27.) "Abuse of an elder" is defined as "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering." (§ 15610.07, subd. (a).) "Financial abuse" occurs when someone "[t]akes, secretes, appropriates, or retains real or personal property of an elder or dependent adult to a wrongful use or with intent to defraud, or both." (§ 15610.30, subd. (a)(1).) "Mental *Page 1160 
suffering" is defined as "fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, [or] harassment. . . ." (§ 15610.53.)
At the time these incidents occurred, Bookout was a 78-year-old California resident, and therefore qualifies for protection as an elder under the Elder Abuse Act. (§ 15610.27.) Bookout's verified petition and her testimony at the hearing contain substantial evidence of Nielsen's past acts toward her, which can fairly be characterized as abusive, threatening and harassing behavior resulting in mental suffering and emotional harm. (§ 15610.07, subd. (a).) Evidence showed those acts included Nielsen shaking his fists at Bookout; threatening to provoke her until she suffered a stroke and died; attempting to tape-record anything she said without her consent; locking her out of the residence; interfering with her access to her personal property, whether by secreting it in a locked storage facility, screwing cabinets closed, or removing her property; and forcing her to remain in her bedroom with the use of bright lights and cameras.
Nielsen's sworn written statement and testimony at the hearing contradicted some of Bookout's testimony, blamed her for the problems they faced, or provided innocent explanations for his actions. It was for the trial court to weigh the evidence and consider the demeanor and credibility of the witnesses. (Small v. Fritz Companies, Inc. (2003)30 Cal.4th 167, 182 [132 Cal.Rptr.2d 490, 65 P.3d 1255].)
 III. NIELSEN'S CLAIM FOR ABUSE OF PROCESS IS NOT BEFORE US ON APPEAL.
Nielsen argues the restraining order is frivolous given that he and Bookout are engaged in a legal battle to determine their respective rights to the property and that Bookout just wanted him out of the house. It is not necessary to address the merits of this argument because Nielsen did not raise his abuse of process claim before the trial court; he therefore waived his right to raise it on appeal. (In re Marriage ofEben-King King (2000) 80 Cal.App.4th 92, 117 [95 Cal.Rptr.2d 113];In re Marriage of Hinman (1997) 55 Cal.App.4th 988, 1002 [64 Cal.Rptr.2d 383]; In re Aaron B. (1996) 46 Cal.App.4th 843, 846
[54 Cal.Rptr.2d 27]; Steele v. Totah (1986) 180 Cal.App.3d 545,551-553 [225 Cal.Rptr. 635].) *Page 1161 
 DISPOSITION
The order is affirmed. Respondent to recover costs on appeal.
Rylaarsdam, Acting P.J., and Ikola, J., concurred.
[1] The statute permits the court to issue the protective order based solely on written affidavits. (§ 15657.03, subd. (c).)
[2] "An order may be issued under this part, with or without notice, to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit or, if necessary, an affidavit and any additional information provided to the court pursuant to [Family Code] Section 6306, shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (Fam. Code, § 6300.)
[3] "`Burden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court. The burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt. ¶ Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." (Evid. Code, § 115.) *Page 1162