Filed 4/10/18

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GORDON B., | B278083 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS155902) |
| v. | |
| SERGIO ALBERTO GOMEZ, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles, Carol Boas Goodson, Judge. Reversed and remanded with directions.

Gordon B., in pro. per., for Plaintiff and Appellant.

No appearance by Defendant and Respondent.

———————————————————

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

Gordon B., in propria persona, appeals from the trial court's denial of his request to renew an elder abuse restraining order against his neighbor, respondent Sergio Alberto Gomez (Gomez).  Gordon B. contends the trial court erred by denying his request for lack of evidence that further significant abuse occurred since the original restraining order was issued.  We agree, and reverse and remand with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

We rely on the record provided to piece together and summarize the factual and procedural history of this dispute.[1]

Gordon B., a 75-year-old disabled veteran, resides alone. Gordon B. appeared as a witness at two animal control hearings on June 24, 2014 and October 16, 2014.  Soon thereafter, according to Gordon B., five persons involved in those hearings— Gomez, Nohemi Matias Gomez (Gomez's wife), Maria Matsuda, Marylou Sanchez, and Jesus Gonzalez—began to harass him. Gordon B. does not provide details of how each person harassed him, but alleges the destruction of his personal property, verbal

---

[1] Gordon B. provided copies of the following documents: (a) the trial court's July 31 and August 21, 2015 minute orders; (b) the trial court's August 21, 2015 elder or dependent adult abuse restraining order after hearing; (c) the August 15, 2016 notice of hearing to renew restraining order; (d) the reporter's transcript of the September 6, 2016 hearing; and (e) the trial court's September 6, 2016 minute order denying his petition to renew orders prohibiting harassment.  Based on a review of the case summary, Gordon B. did not provide copies of the following documents: (f) his July 10, 2015 request for elder or dependent adult abuse restraining orders; (g) his July 10, 2015 declaration; (h) the July 10, 2015 temporary restraining order; or (i) the reporter's transcript of the August 21, 2015 hearing, if one was prepared.

2

abuse, and obscene gestures when he ventured out of his house. Gordon B. also alleges that Gomez, a neighbor, tried to run him down with a Ford pickup truck on April 4, 2015, and set off large firecrackers on his driveway on July 7, 2015.

On July 10, 2015, Gordon B. obtained elder adult or dependent adult abuse temporary restraining orders against all five of his harassers pursuant to Welfare and Institutions Code section 15657.03. Gomez, his wife, and Maria Matsuda were served, but the other two, Jesus Gonzales and Marylou Sanchez, apparently disappeared upon learning of the restraining orders. On July 31, 2015, the trial court issued an order continuing the hearing on the restraining orders to August 21, 2015 and maintaining the temporary restraining orders in full force and effect.

At the August 21, 2015 hearing, the case against Maria Matsu was dismissed by agreement of the parties. The trial court issued a "stay away" restraining order directing Gomez to stay at least 100 feet from Gordon B. and his residence, and to sell, store or surrender any guns in his possession. The court made the order effective for one year, expiring at midnight on August 21, 2016. The court also issued a restraining order against Gomez's wife, which is not the subject of this appeal. We do not know whether a reporter's transcript was prepared; there is no such transcript in the record. Thus, we do not know what evidence the court considered, what findings it made, or its reasons for issuing the original restraining orders.

Gordon B. filed a request to renew the restraining order against Gomez before it expired. Gordon B.'s request is not in the record. The trial court issued a notice of hearing to renew the restraining order on August 15, 2016, set a hearing for September 6, 2016, and ordered that the current restraining order remain in effect until the end of that hearing.

3

Gordon B., then represented by counsel, appeared at the September 6, 2016 hearing. So did Gomez. The trial court reviewed the record and Gordon B.'s request to renew the restraining order against Gomez. The trial court explained it was not concerned with what had happened in the past, and asked Gordon B. what had happened recently, and if he had "called the police to enforce the restraining order." Gordon B. stated that he had "called the police a number of times to enforce the restraining order and they had been out and spoke with Mr. and Mrs. Gomez. Each time, for a brief period, there was improvement."

Gordon B. recounted several incidents. Gordon B. stated that on January 14, 2016, he observed Gomez double-parked within 100 feet of his house. Gordon B. also said Gomez drove by his house looking at him in a threatening way. The court responded, "What I need from you are specific dates and specific contact as opposed to threatening, dirty looks, giving you the finger, screaming something at you. I need acts that would justify a renewal of the restraining order."

Gordon B. said that in January 2016, he was walking down the alley by his house, after checking on a neighbor's house. There, he encountered Gomez, who came through the alley very quickly and right at Gordon B. Gordon B. said he called the police, who spoke with Gomez.

The court stated, "the fact is that, as I explained to you before, it's hard to get a renewal and it's hard to get enforcement unless there is a significant threat, a reasonable threat or an act of violence."

The court then asked to hear from Gomez, who opposed the renewal of the restraining order. Gomez asked the court to consider a letter he brought related to a case that had been closed in which Gordon B. "said that [Gomez] wanted to run him over

4

with the car." Gordon B.'s counsel reviewed the letter, and stated it concerned an alleged assault with a deadly weapon, but did not specify the date of the incident or the weapon. The letter referred to a September 19, 2015 hearing at which the hearing officer found insufficient evidence to bring criminal charges. Gordon B. concedes this incident occurred on April 4, 2015, before the original restraining order was issued.

The trial court asked Gordon B. about other incidents. Gordon B. stated that on the Fourth of July in 2015 and again in 2016, several "large military-grade firecrackers" were thrown on the front lawn and driveway of his house. Gordon B. said he witnessed Gomez throw the firecrackers on one occasion, and on another the perpetrator was an unknown male. The incident he attributed to Gomez was raised at the August 21, 2015 hearing at which the original restraining order was issued. The court stated, "Well, that's a long time ago. Do you have anything else?"

Gordon B. stated that someone used a device to puncture the sidewall of a tire of his car. The court responded that it could do nothing about property damage, which Gordon B. could report to the police as vandalism. Gordon B.'s counsel argued that the culprit trespassed to puncture Gordon B.'s tire, but the trial court noted there was no proof of who did it.

Gordon B.'s counsel argued that there had been "a drastic improvement since this particular restraining order has been in place. Prior to the restraining order, there were confrontations. There was aggressive behavior. There were obscenities. Since the restraining order has been in place, there has been a drastic difference in the experience that Mr. [B.] has had with his neighbors." The trial court responded, "Well, it expired on [August 21] and nothing has happened." Gordon B's counsel corrected the court, stating the restraining order had remained in effect pending the hearing on its renewal, and explained Gordon

B.'s "fear is that once this restraining order is no longer in place, the behavior of the respondent is going to go back to what it was."

The court rejected these concerns as "speculative" and concluded, "You have insufficient evidence for a renewal." The court recommended that Gordon B. install security cameras. The court admonished Gomez to stay away from Gordon B., his property, and his car.

This appeal followed.

## DISCUSSION

Gordon B. contends the trial court erroneously denied his request to renew the restraining order against Gomez for lack of evidence of further abuse, and failed to determine whether Gordon B. demonstrated a reasonable apprehension of future abuse. Gordon B. also contends the trial court violated his due process rights by refusing to consider his documentary evidence and by denying his counsel the opportunity to be heard. We agree that the trial court applied the incorrect legal standard, as discussed below, and therefore reverse with directions. Gordon B.'s second contention is not supported by the record, which shows he did not seek to admit documentary evidence and the trial court permitted his counsel to be heard.

### I.    Denial of Request to Renew Restraining Order

Gordon B. requested the trial court renew a restraining order issued pursuant to the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act), codified as Welfare and Institutions Code section 15657.03. The trial court denied Gordon B.'s request.

The denial or "issuance of a protective order under the Elder Abuse Act is reviewed for abuse of discretion, and the factual findings necessary to support such a protective order are

6

reviewed under the substantial evidence test." (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137 (*Bookout*) [adopting the standard of review for protective orders under the Domestic Violence Prevention Act].) "However, the question of 'whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review.' " (*Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 560 (*Cueto*).)

In relevant part, Welfare and Institutions Code section 15657.03 provides: "These orders may be renewed upon the request of a party, either for five years or permanently, without a showing of any further abuse since the issuance of the original order, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party. The request for renewal may be brought at any time within the three months before the expiration of the order." (Welf. & Inst. Code, § 15657.03, subd. (i)(1).)

Because a protective order specific to elder abuse is of relatively recent vintage, cases interpreting the statute have looked to analogous procedures governing domestic violence restraining orders under Family Code section 6300 et seq. (See, e.g., *Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137 (*Gdowski*); see also *Bookout*, *supra*, 155 Cal.App.4th at p. 1137.) Because no reported case has addressed the showing required to renew an elder abuse restraining order, we rely on cases applying the statutory provision for renewing a domestic violence restraining order, which is virtually identical to that for renewing an elder abuse restraining order: "These orders may be renewed, upon the request of a party, either for five years or permanently, without a showing of any further abuse since the issuance of the original order, subject to termination or modification by further order of the court either on written stipulation filed with the

7

court or on the motion of a party.  The request for renewal may be brought at any time within the three months before the expiration of the orders." (Fam. Code, § 6345, subd. (a).)

By their terms, both statutes permit a party to request the court to renew a restraining order "without a showing of any further abuse since the issuance of the original order." (Fam. Code, § 6345, subd. (a); Welf. & Inst. Code, § 15657.03, subd. (i)(1).)  A leading case interpreting Family Code section 6345, subdivision (a) explained:  "It would be anomalous to require the protected party to prove further abuse occurred in order to justify renewal of that original order.  If this were the standard, the protected party would have to demonstrate the initial order had proved ineffectual in halting the restrained party's abusive conduct just to obtain an extension of that ineffectual order.  Indeed[,] the fact a protective order has proved effective is a good reason for seeking its renewal." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1284 (*Ritchie*).)  Thus, "a trial court errs when it requires a party to show a violation of the restraining order as a condition to renewing that order." (*Cueto, supra,* 241 Cal.App.4th at p. 561.)

Instead, a "trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse.  So there should be no misunderstanding, this does not mean the court must find it is more likely than not future abuse will occur if the protective order is not renewed.  It only means the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Ritchie, supra,* 115 Cal.App.4th at p. 1290.)

Here, the trial court erroneously required evidence of further abuse that violated the restraining order.  Based on the

8

legislative history and language of the Elder Abuse Act, "a protective order under the Elder Abuse Act may issue on the basis of past abuse, without any particularized showing that the wrongful acts will be continued or repeated." (*Gdowski*, *supra*, 175 Cal.App.4th at p. 137.) The trial court here stated it was not interested in "what happened in the past" but "what has been happening recently," and asked Gordon B. if he had "called the police to enforce the restraining order." The trial court also asked Gordon B. for "specific dates and specific contact as opposed to threatening, dirty looks, giving you the finger, screaming something at you. I need acts that would justify a renewal of the restraining order."

No such acts needed to have been shown. As *Ritchie*, *supra*, 115 Cal.App.4th 1275 explained, the trial court should have considered whether, based upon Gordon B.'s evidence, it was "more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Id*. at p. 1290.) Under *Ritchie*, that inquiry begins by considering the "evidence and findings" that supported the issuance of the original restraining order to appraise the risk of future abuse. (*Ibid*.) The trial court should also consider whether there have been "any significant changes in circumstances" by asking, for example, "have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order?" (*Id*. at p. 1291.)

The record does not include Gordon B.'s application for the original restraining order. It appears, however, to have been based in part on Gordon B.'s allegation that Gomez tried to run him down with a Ford pickup truck in April 2015 and exploded firecrackers on his driveway in July 2015. At the September 6,

9

2016 hearing, Gordon B. told the trial court about a further incident in January 2016, when he was walking down the alley by his house and Gomez came through the alley very quickly and right at him. Gordon B. did not state whether Gomez was driving a vehicle, possibly because the trial court cut him off to inquire whether he had called the police. Gordon B. confirmed he had, and the police spoke with Gomez. Gordon B. also stated that an unidentified person had exploded firecrackers on his lawn in July 2016.

These and other examples Gordon B. provided suggest that he and Gomez have not "moved on with their lives." They remain neighbors and have encountered one another several times since the restraining order was issued. Gordon B. stated that "Mr. Gomez will cruise by my house and look at me in a threatening way," which reflects Gordon B.'s belief that Gomez continues to harbor animus towards him.

Lastly, the trial court dismissed as "speculative" counsel's argument that the restraining order against Gomez had been effective in eliminating "confrontations" and "aggressive behavior," and without a restraining order, Gordon B. feared Gomez's behavior would "go back to what it was." Gordon B.'s fear is based on more than speculation, and evidence that " 'a protective order has proved effective is a good reason for seeking its renewal.' " (*Cueto*, *supra*, 241 Cal.App.4th at p. 561.)

We hold the trial court erroneously based its denial of Gordon B.'s request to renew the protective order on his failure to present evidence of further abuse. On the record before us, we cannot determine whether the error was harmless. We do not know, for example, what findings the trial court that issued the original restraining order made concerning verbal or physical threats by Gomez. Nor can we determine from the record whether the alleged January 2016 incident in the alley involved a

10

threat with a motor vehicle. If that were the case and found to be true, it would support Gordon B.'s reasonable apprehension of future abuse from Gomez.

For these reasons, we reverse for a further hearing on Gordon B.'s request to renew the protective order, at which hearing the trial court should determine whether Gordon B. has a reasonable apprehension of future abuse that is sufficient to warrant renewal of the original protective order.

## II.   The Trial Court's Alleged Due Process Violations

Gordon B. contends the trial court violated his right to due process by refusing to consider his documentary evidence. Gordon B. asserts he possessed "ample evidential documents to support his case" including four police reports, a log of incidents, an affidavit, and photos showing Gomez within 100 feet of his house, all since the first restraining order was issued. Nowhere in the transcript of the September 6, 2016 hearing does it appear that Gordon B. or his counsel sought to introduce documentary evidence, or that the court declined to consider such evidence. Rather, at the page and line numbers Gordon B. cites, the trial court merely stated, "And I see that you have kept a notebook—." Gordon B. interjected, "Yes, I do. And—" The court continued, "—which is excellent. That makes sense."

Gordon B. also contends the court "rejected the documentation offered up by [his counsel] to establish the necessary standard of proof, under §6345(a) of the California Family Code." Here, Gordon B. disregards the rules governing appellate briefs by failing to support this factual assertion with a citation to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C); see *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 [appellate court need not consider any matter asserted without

11

appropriate reference to the record].)  Nor could we find anywhere in the reporter's transcript an attempt by Gordon B.'s counsel to offer documents or legal authorities to the court, much less any refusal to let him do so.[2]

Gordon B. also contends the trial court violated his due process rights by denying his counsel's requests to speak on his behalf.  Gordon B. cites two examples in the record, but in each case, the court simply asked Gordon B. personally to respond to a question.  In the first example, following a colloquy with Gordon B.'s counsel, the court stated, "And since you did have a restraining order, have you called the police to enforce that restraining order?  And if you can answer that, sir, I'd appreciate that."  In Gordon B.'s second example, the court asked for specific dates and acts "that would justify renewal of the restraining order."  Gordon B.'s counsel stated, "Your honor, may I speak on behalf of my client?"  The court responded, "Yes, you may, although I do want him to address the . . . I want to hear it from him as opposed to you."  Subsequently, Gordon B.'s counsel was able to address the court without any interference on numerous occasions.

---

[2] The only document presented to the court at the September 6, 2016 hearing was a letter offered by Gomez, which prompted the court to ask, "Who is this letter from because I can only elicit testimony in court."  Gomez explained he went to the court on La Cienega Boulevard, where he was given the document.  The court asked him to show it to Gordon B.'s counsel, who discussed its contents with the trial court.

## DISPOSITION

The order is reversed and remanded with directions for the trial court to reconsider Gordon B.'s request to renew the elder abuse restraining order. In exercising its discretion, the trial court should consider whether Gordon B. has proved a reasonable apprehension of future abuse by Sergio Alberto Gomez. We express no view on the outcome upon remand. The parties are to bear their own costs on appeal.

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>.


BENDIX, J.[*]

We concur:



ROTHSCHILD, P. J.



JOHNSON, J.

---

[*] Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice, pursuant to article VI, section 6 of the California Constitution.