Filed 2/27/24  Carol D. v. Wright CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CAROL D.,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>JOE WRIGHT,<br><br>        Defendant and Respondent. | A165330<br><br>(Alameda County<br> Super. Ct. No. HF20064657) |

Carol D., who has lived in the same apartment complex for over three decades, sought and received a one-year restraining order pursuant to the Elder Abuse and Dependent Adult Civil Protection Act against her neighbor's caretaker, Joe Wright.  (Welf. & Inst. Code, § 15600 et seq. (Elder Abuse Act).)[1]  In December 2021, the trial court denied Carol's request to renew the restraining order based on its misunderstanding of the applicable legal standard for renewal of an elder abuse restraining order.  We reverse.

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

Wright, who is self-represented, filed a letter with the court instead of a respondent's brief.  We exercise our discretion to consider Wright's letter, but disregard factual assertions unsupported by the record.  (Cal. Rules of Court, rule 8.204(a)(1)(C) & (e)(2)(C); See *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267 ["We are entitled to disregard such unsupported factual assertions"].)  Wright did not appear at oral argument.

1

# BACKGROUND

Carol is 70 years old, retired, and has lived in the same 26-unit apartment complex in Berkeley for over 35 years. Wright is a healthcare worker who takes care of Frank C., another tenant in the apartment complex, six days a week. When he is working, Wright spends up to 12 hours a day with Frank in the apartment complex.

In June 2020, Carol requested a restraining order against Wright pursuant to the Elder Abuse Act. She alleged Wright had yelled at her, banged on her door, threatened to break her fingers, called her a "bitch," and that he made stabbing motions towards her with a screwdriver. She also alleged he had vandalized her property by pouring cat feces and urine in her car, spray-painting her property, destroying her garden, and leaving cigarette butts by her front door. In response, Wright claimed he had never harassed Carol and that it was she who harassed him.

At an October 2020 hearing, several witnesses, including Carol and Wright testified. At the conclusion of the hearing, the trial court issued a one-year restraining order pursuant to the Elder Abuse Act. The restraining order required Wright to stay at least 100 yards away from Carol but allowed him to "be on the premises" when assisting Frank, so long as he stayed at least 10 yards away from her.[2]

In September 2021, Carol filed a request to renew the order permanently. She alleged Wright continued to harass her by obstructing her

---

[2] Six months later, Carol filed a request to modify the restraining order, seeking to remove the provision allowing Wright to be at the property while assisting Frank. She claimed the provision created a "loophole . . . based on the mistaken premise" that Wright was either a tenant or employed by Frank. The trial court dropped the request because neither party appeared at the hearing on the request.

movements around the apartment complex, threatening her, and trapping her in her apartment for hours at a time, making it unsafe for her to come and go from her apartment. Carol further claimed that Wright had destroyed "the windshield of the used vehicle [she] had to buy to replace the previous one which was poured full of urine [and] covered with spray-painted profanity." In support of her renewal request, Carol offered various letters from friends and past colleagues, photographs of the alleged vandalism, and a "Post Restraining Order Wright Incidents" log. The log documented numerous instances where she claimed Wright violated the restraining order by coming too close to her, described several incidents of alleged harassment, and documented her calls to the police. Carol also submitted four thumb drives of photo and video evidence.[3]

A few days later, Carol submitted a second renewal request with additional evidence which included another letter of a friend speaking highly of Carol, receipts for the replacement of the windshields, and various pictures showing Carol's plants being broken, trash at her door, and the proximity of Wright's car to her car in the parking lot. She also submitted a portion of the reporter's transcript from the original hearing on her request for an elder abuse restraining order, and a declaration describing a November 2021 incident where Wright allegedly violated the restraining order. Carol called the police on that occasion; the police informed her that the restraining order had expired and there was nothing they could do without a new order.

In October 2021, Wright filed a request to modify the restraining order. The court set Wright's request for hearing on the same day as Carol's request to renew the order.

---

[3] We augment the record on our own motion to include Carol's thumb drives. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

In December 2021, the trial court held a hearing on Carol's renewal request and Wright's request to modify. Carol testified she had been subjected to extreme behavior from Wright ever since she reported him for smoking on the property. She described Wright's conduct which gave rise to the initial restraining order: leaving burning cigarettes at her door, smashing her garden, spray-painting her front door, and threatening to break all of her fingers. Carol expressed frustration that the initial restraining order was "so full of loopholes" that it offered her "no protection at all." Wright did not comply with the protected perimeters and the police could not figure out how to enforce the order. She expressed concern for her safety and stated, "I am terrified if I can't get him off the property what will happen when I go home today."

After Carol testified, the court asked Wright to respond. Wright testified he was "abiding by the restraining order 100 percent" and that Carol was only pretending to fear him. He explained that Carol regularly sneaked up behind him and recorded him and that she put herself in situations where she could "become the victim." Wright said that Carol would trap him and Frank in the apartment by standing outside the door while recording for 15 to 20 minutes at a time. Wright claimed that he could not check Frank's mail or take out his trash because Carol constantly called the police on him, which negatively impacted his ability to do his job. Additionally, he claimed that she harassed him and Frank by constantly alleging they were smoking in the building, leaving cigarette butts on Frank's doorstep, and reporting them to the city for smoking—for which they were cited and fined despite neither of them smoking. Wright produced an IHSS healthcare document to refute Carol's claim that he was not a legitimate caregiver.

Upon learning that Frank was present, the court asked, "Do you mind if we bring him in?" Frank confirmed in brief testimony that Wright assists him.[4]

The trial court next asked Carol a few questions, including whether she had proof that Wright broke her windshield. Carol responded, "I don't have proof but he broke it." She explained that she did not have any of these issues until Wright became a frequent visitor at the apartment complex. The court also questioned Carol regarding the times she called the police and whether the police ever arrested Wright for violating the restraining order. Carol stated the police had not, to her knowledge, arrested Wright but noted that since the COVID-19 pandemic, "they don't take anyone in unless there is a larger threat of some kind."

The court indicated that it was ready to rule. Carol told the court that she had witnesses, and Wright added "I do too. Like, I have character witnesses."

The court allowed Carol to call her friend Harvey S. Harvey described an incident where Wright aggressively yelled at Carol about taking the "racks for the barbecue." Harvey stood between the parties during the interaction because he was concerned for Carol's safety. He also mentioned that Carol called him on various occasions complaining about Wright's behavior, and that he had observed some of the property damage Carol alleged. The court did not allow the parties to present the testimony of additional witnesses due to time constraints[5] and because it had "got[ten] a sense of" the parties' character during the hearing.

---

[4] After the court questioned Frank C., it asked Wright if he had any questions, but did not offer Carol an opportunity for cross-examination.

[5] After hearing Frank C.'s testimony, the trial court commented, "It's a little after 12:00 and I need to take all of that into consideration and rule." A

The court cited Welfare and Institutions Code section 15657.03 as governing its decision but stated that it was "not going to speak to the necessity of the restraining order . . . that was put in place last year. What I've been asked to do is look at here and now and also what has occurred since that restraining order was put in place. . . . That is what I was most interested in because that's what I need to make a decision about." The court determined there was "clearly an issue" between the parties based on the various allegations and behavior at the hearing but concluded "I don't believe there's a basis to issue, renew or continue a restraining order between the parties." The court denied the renewal request despite the evidence Carol had presented.[6]

After denying Carol's request to renew the restraining order, the trial court cautioned Wright, "there are cameras all over" the apartment complex and warned him that his "behavior will be under scrutiny." The court reminded Wright that Carol could request another protective order if he misbehaves. The court encouraged Wright to focus on caring for Frank; it noted that Wright was "rightfully" at the apartment complex to help Frank and admonished Carol for "ask[ing] this court to place her needs above [Frank's]."

---

few minutes later, the court told Harvey S.: "Okay, I'm going to stop it there. . . . Actually, we're getting ready to close down so you can go ahead and wait outside, if you wish."

[6] The court stated: "[F]rankly, there's no proof of the allegations other than—I understand [Carol] has recorded on occasions. She didn't present those today."

6

## DISCUSSION

Carol contends the trial court abused its discretion when it applied an incorrect legal standard in denying her request to renew the elder abuse restraining order. We agree.

### A. Standard of Review

A trial court's decision on a restraining order renewal request under the Elder Abuse Act is reviewed for abuse of discretion. (*Gordon B.* v. *Gomez* (2018) 22 Cal.App.5th 92, 97–98 (*Gordon B.*).) " 'However, the question of "whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review." ' " (*Id.* at p. 98.) " 'If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal.' " (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.)

### B. Applicable Law

The purpose of the Elder Abuse Act is to protect elders from abuse. An "elder" is "any person residing in this state, 65 years of age or older." (§ 15610.27.) Elder abuse includes "Physical abuse, neglect, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering." (§ 15610.07, subd. (a)(1).) "Mental suffering" is defined as "fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, harassment, or by deceptive acts performed . . . with malicious intent to agitate, confuse, frighten, or cause severe depression or serious emotional

7

distress of the elder." (§ 15610.53.) An elder abuse restraining order may be issued to "restrain any person for the purpose of preventing a recurrence of abuse" upon a showing of "reasonable proof of a past act or acts of abuse" of the petitioner. (§ 15657.03, subd. (6)(c).) An order "may issue on the basis of evidence of past abuse, without any particularized showing that the wrongful acts will be continued or repeated." (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137.)

As relevant here, an order may be renewed "*without a showing of any further abuse since the issuance of the original order*." (§ 15657.03, subd. (i)(1), italics added.) The trial court should renew a restraining order if " 'it finds by a preponderance of the evidence that the protected party entertains a "reasonable apprehension" of future abuse.' " (See, e.g., *Gordon B.*, *supra*, 22 Cal.App.5th at p. 99.) We rely on cases interpreting the analogous domestic violence restraining order provisions under Family Code section 6300 et seq. (See, e.g., *Gordon B.*, at p. 98; *Gdowski v. Gdowski*, *supra*, 175 Cal.App.4th at p. 137.) In determining whether the moving party entertains a reasonable apprehension of future abuse, the court "should consider the evidence and findings on which [the] initial order was based." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290.) The existence of the initial order and its underlying finding and facts may "be enough in themselves to provide the necessary proof" to renew the order. (*Id.* at p. 1291.) The court should also consider any significant change in circumstances showing the parties have moved on with their lives, and, in cases not involving physical abuse, the burdens the protective order imposes on the restrained party. (*Ibid.*)

## C. The Trial Court Improperly Focused on Events Which Transpired After Issuance of the Initial Restraining Order

Here, the trial court failed to give weight to the substantial evidence in the record documenting Carol's reasonable apprehension of future abuse and focused instead on events which transpired after issuance of the initial restraining order. As noted above, the court declared it was "not going to speak to the necessity" of the original restraining order because "[w]hat I've been asked to do is look at here and now and also what has occurred since that restraining order was put in place . . . . That is what I was most interested in because that's what I need to make a decision about." The court, however, "should consider the evidence and findings on which [the] initial order was based" and such evidence and findings may be sufficient to justify renewal of the order. (*Ritchie v. Konrad*, *supra*, 115 Cal.App.4th at pp. 1290–1291.) The court thus erred by focusing primarily on what had happened since the restraining order was put in place to deny Carol's renewal request. (See *Gordon B.*, *supra*, 22 Cal.App.5th at p. 99; *Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 181 [trial court misapplied law "[b]y requiring a showing of more recent abuse and failing to analyze whether the original abuse was sufficient" to renew order]; *In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 540–541 [trial court erred by excluding consideration of the evidence underlying the original restraining order].)

This situation closely resembles *Gordon B.*, where the appellate court reversed the denial of a request to renew a restraining order because the trial court "erroneously required evidence of further abuse that violated the restraining order." (*Gordon B.*, *supra*, 22 Cal.App.5th at p. 99.) In *Gordon B.*, the trial court explicitly stated it "was not interested in 'what happened in the past' but 'what has been happening recently.' " (*Ibid.*) The court also asked if the moving party had " 'called the police to enforce the restraining

9

order' " and stated that it needed " 'acts that would justify a renewal of the restraining order.' " (*Ibid.*) There, the appellate court held that the court "should have considered whether, based upon [the] evidence, it was 'more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable.' " (*Ibid.*) As in *Gordon B.*, the court's comments in this case regarding the lack of proof and its inquiry whether the police arrested Wright demonstrate the court misunderstood the legal principles at issue.

The court's admonition to Wright compounds the error. An admonition of the restrained party at a renewal hearing indicates that the protected party had something to fear. (See *Cueto v. Dozier* (2015) 241 Cal.App.4th 550, 562; *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 120.)

In his letter to the court, Wright argues there is "no substantive evidence of wrongdoing on my part" and claims that Carol is the harasser, not him. However, the record reflects that the court did not consider all of the available evidence, including Carol's video evidence which shows at least two instances of Wright being in close proximity to her. On the record before us, we cannot determine whether the trial court would have determined that Carol had a reasonable apprehension of future harm had it considered all of the available evidence and applied the correct legal principles. On this record, reversal is required.

## DISPOSITION

The order is reversed and remanded with directions for the trial court to reconsider Carol's request to renew the elder abuse restraining order. Upon remand, we direct the court to consider all of the relevant evidence produced by the parties, including the factual findings underlying the

original restraining order.  We express no view on the outcome upon remand.  Carol is entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

_____

Mayfield, J.*

We concur:

_____

Richman, Acting P. J.

_____

Miller, J.

*Carol D. v. Wright* (A165330)

* Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.