Filed 5/1/25  Pfrang v. Amoroso CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MAYUMI PFRANG, | |
| Plaintiff and Appellant, | G063130 |
| v. | (Super. Ct. No. 30-2022-01298138) |
| JULIE RENEE AMOROSO, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Carol L. Henson, Judge. Affirmed.

Mayumi Pfrang, in pro. per., for Plaintiff and Appellant.

Julie Renee Amoroso, in pro. per., for Defendant and Respondent.

\*          \*          \*

Plaintiff and appellant Mayumi Pfrang appeals from an order denying her request for a restraining order against defendant and respondent Julie Renee Amoroso. Pfrang sought the restraining order pursuant to the Elder Abuse and Dependent Adult Civil Protection Act, Welfare and Institutions Code section 15600 et seq. (the Elder Abuse Act). Pfrang argues the trial court erred by not permitting an excused witness to return and testify on the last day of trial as a rebuttal witness.

We affirm. Most of the questions which Pfrang claims she would have asked the witness exceeded the scope of her offers of proof at trial. Some of the questions were or could have been answered by Pfrang's testimony, and Pfrang has not provided us an adequate record to determine whether other questions would have elicited relevant testimony.

## FACTS AND THE TRIAL COURT'S FINDINGS

The information we have about this case is limited because the only items in the clerk's transcript are the register of actions, a minute order dated September 5, 2023, Pfrang's notice of appeal, and Pfrang's designation of record on appeal. An evidentiary hearing was conducted over four days—April 26, May 22, July 11, and September 5, 2023—yet the reporter's transcript is limited to the final day. Seven exhibits, including three video recordings, were received into evidence, but no exhibits have been transmitted to us.

What we do know is that on December 22, 2022, Pfrang filed a request for an elder or dependent adult restraining order against Amoroso. On that same day, the trial court issued a temporary restraining order against Amoroso and issued an order to show cause. On September 5, 2023, the trial court made findings on the record and issued a minute order denying Pfrang's request for a restraining order.

2

Testimony from the last day of trial, argument by Amoroso's counsel, and the trial court's findings are the only source for the facts of this case. Pfrang and Amoroso were neighbors. They did not get along. There was at least one incident in which they yelled at each other, and another incident in which Amoroso placed on Pfrang's car the shell of an egg which Amoroso claimed Pfrang had thrown at her house. Amoroso testified that Pfrang's caretaker, Tolman Le, broke into her home 14 or 15 times, damaged a lemon tree in her backyard, and threatened to kill her. Pfrang testified that in April, May, and June 2023, she was visited by police officers nine times at Amoroso's instigation.

In denying Pfrang's request for a restraining order, the trial court stated it had considered all the evidence and gave the evidence appropriate weight. The court stated it had considered the testimony "from both sides on every issue, including all the issues that are in dispute like distance, location, who started it, whether it was mutual, whether it was on one side, who it was directed to, and what motivated it."

After finding that Amoroso had no relevant criminal convictions, the trial court described the two primary categories of conduct in dispute: "From the beginning, the conduct alleged has fallen into two primary categories: one is—is yelling; the other is the incident of what I'm loosely going to call for the moment 'vandalism,' the act of putting the eggshell—on a vehicle that—that is not fairly clear to the court whether Ms. Pfrang owns it outright or . . . Mr. Le drives it for her benefit."

The court then made findings on the eggshell incident: "I don't believe that the eggshell incident is an act of vandalism. It—it doesn't look to the court that it resulted in any personal damage to the vehicle. [¶] I watched her, again on the video, lay it on the hood. . . . She didn't even grind it into

3

the hood . . . If she did any lasting damage by putting an eggshell on that car, I sure as heck can't see it. Was it a smart thing to do? No, not a smart thing to do. You just don't do things like that. [¶] But did that act amount to an act of vandalism? . . . I don't believe that it is. . . . It is an isolated incident that at least Ms. Amoroso says she did because she believed that eggs were thrown at her house [and] Ms. Pfrang has a chicken that produces eggs that look like that. That may or may not be correct. I don't know. [¶] But at least it helps me understand her motivation, whether she's accurate or not may be another matter. But . . . I don't think that act amounts to an act of elder abuse for which I would issue a restraining order."

The court also noted: "[T]here's a dispute about rent and whether she was a good renter and her behaviors in the home. The court does not issue restraining orders based on whether someone was a good renter or a good landlord for that matter."

The court made findings on the yelling incident: "[T]he other conduct is the yelling incident, and the court had a few videos demonstrating . . . the yelling. [¶] Now, the problem with the videos is what they do demonstrate—they don't necessarily let the court know who initiated it from the beginning. It just demonstrates to the court, if anything, that it was not only occurring but in some instances, at least it appears to have been mutual because Ms. Pfrang does not retreat; Ms. Pfrang just answers back just as animated as Ms. Amoroso. At the end of the day, I'm sitting here thinking that Ms. Pfrang's version and her theory may be correct, but it may not be sufficient. [¶] I have to be satisfied that this is more likely than not the case. This may be a situation where we have the wrong parties because it seems to me . . . the conflict, it is not directly towards Ms. Pfrang. She may be the

4

uncomfortable recipient of having her neighborhood upset, but that this is really against Mr. Le and Ms. Amoroso."

DISCUSSION

I.

BURDEN OF PROOF AND STANDARD OF REVIEW

An elder person who has suffered abuse may petition the superior court for an order "enjoining a party from abusing, intimidating, . . . threatening, . . . harassing, . . . or disturbing the peace of, the petitioner." (Welf. & Inst. Code, § 15657.03, subd. (b)(4)(A); see *id.*, subd. (a)(1).) The petitioner has the burden to prove a past act of elder abuse by preponderance of the evidence. (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1139–1140.) An order granting or denying a request for an injunction is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(6).

The denial or issuance of a restraining order request under the Elder Abuse Act is reviewed for abuse of discretion. (*Gordon B. v. Gomez* (2018) 22 Cal.App.5th 92, 97-98.)

II.

BACKGROUND

Pfrang contends the trial court erred by not letting her present rebuttal testimony from Le. In the appellant's opening brief, Pfrang lists 16 questions she claims she would have asked Le on rebuttal had she been permitted to do so.

On September 5, 2023, the last day of trial, Pfrang announced, "I have a witness, Tolman Le." When the court stated that Le had already testified, Pfrang claimed he had not finished. Later during the proceedings on September 5, when Pfrang again raised the matter of Le testifying, the court stated: "So here's what happened. . . The minute order from April 26th [2023]

5

showed . . . that Mr. Le was sworn; he did testify; the petitioner [Pfrang] questioned him; Mr. Harlin [Amoroso's counsel] cross-examined him, and he was excused."

The court stated it was inclined to allow Le to testify "[i]f there is some unfinished information that he was going to give the court." The court stated it would not have excused Pfrang if his testimony was not completed and asked Pfrang about what Le would testify to that he had not already covered. The court told Pfrang: "I have to know what the offer of proof is going to be for Mr. Le since this will be the second time now. What is he going to address that [Amoroso's counsel] brought up in his presentation that hasn't already been addressed?"

Pfrang said that Le would testify about Amoroso yelling at him and accusing him of being a burglar. The court replied that Le had already testified on those matters. Pfrang stated that Le also would testify about yelling and accusations made during the course of the trial. Pfrang clarified that in April, May, and June 2023, police officers had visited her home nine times at Amoroso's instigation. The court told Pfrang that testimony about police officers being called to her house would be more compelling coming from her, rather that Le, since it was her home and she was seeking the restraining order. The court stated it would not hear from both Pfrang and Le. Pfrang agreed: "Okay. I'll testify" she said.

Pfrang then testified about the police visits and produced police cards as evidence of those visits. She denied having ever thrown eggs or anything else at Amoroso's house. Pfrang testified about evicting Amoroso and Amoroso being evicted by her own mother.

After Pfrang testified, the court asked her if she had anything else in rebuttal and told her it would not hear from Le on the topic of police

6

visits because his testimony would be duplicative. Pfrang announced she wanted Le to testify in rebuttal on "map and distance." This seems to refer to the distance from a neighbor's doorstep to Pfrang's property line. Apparently there was dispute over whether that distance was 20 feet or 30 feet. The court concluded the distance was irrelevant: "I don't think the question of whether it's 20 feet or 30 feet to the neighbor or more or less is really relevant. The two things are: Did she put eggshells on the car? And does the court consider that as an act of harassment? And is she calling the police constantly and accusing you of things you haven't done to drive you nuts?"

III.

## THE TRIAL COURT DID NOT ERR BY DECLINING TO ALLOW THE PROPOSED REBUTTAL TESTIMONY

Of the 16 questions which Pfrang claims she would have asked Le on rebuttal, questions Nos. 1–9 exceeded the scope of Pfrang's offers of proof and are questions which Pfrang answered or could have answered through her own testimony. In addition, question No. 15 concerns events on July 6, 2023, which likewise were not a subject of Pfrang's offer of proof. The July 6 events were videorecorded, the trial court considered the videorecording, and it was received into evidence. Question No. 16 concerns events on September 14, 2023, nine days *after* the trial court made its ruling.

Questions Nos. 10 and 14 concern the police visits in April, May, and June 2023, which were subjects of Pfrang's offer of proof. Based on that offer of proof, the trial court told Pfrang that her testimony about the police would be more compelling than Le's testimony. Pfrang thereafter did testify about the police visits and presented cards from the police as additional evidence. The trial court did not abuse its discretion under Evidence Code

7

section 352 to exclude cumulative evidence. (*Tuli v. Specialty Surgical Center of Thousand Oaks, LLC* (2024) 105 Cal.App.5th 997, 1029.)

Questions Nos. 11–13 concern Amoroso's visits to her neighbor's house, which Pfrang contends violated the temporary restraining order. At trial, Pfrang apparently claimed that her neighbor's house was only 20 feet from her property and Amoroso was therefore in violation of the temporary restraining order every time she visited the neighbor.

But, of questions Nos. 11–13, questions Nos. 12 and 13 ask about *conversations* Le had with Pfrang's neighbor about whether Amoroso had visited on a particular day and what Amoroso had wanted from the neighbor. Those were not subjects of Pfrang's offer of proof. Only question No. 11 concerns the distance between the neighbor's house and Pfrang's property line, which was a subject of Pfrang's offer of proof.

But as to Le testifying about distance, Pfrang has failed to provide an adequate record. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) "'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].'" (*Id.* at p. 609.) These rules apply equally to parties represented by counsel and self-represented parties. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985.)

Because the temporary restraining order is not part of the appellate record, we do not know its terms and cannot determine whether the proposed rebuttal question might have elicited testimony relevant to whether

8

Amoroso violated it. We cannot tell whether Amoroso was restrained from coming within 20 feet or 20 yards, or any particular distance from either Pfrang or her home. Indeed, we do not have any evidence from this case except for the testimony from September 5, 2023, and we do not have any pleadings or other papers filed in court except for the September 5, 2023 minute order. We have some representations by Amoroso's counsel but we do not know what the testimony from before September 5, 2023 or any of the exhibits showed about distance.

Further, the trial court found the issue of the distance between the neighbor's doorstep and Pfrang's property line was not germane to the issues whether Amoroso committed the acts allegedly constituting harassment. The two primary forms of harassment were presented in a declaration submitted by Pfrang. Although the declaration is not part of the appellate record, it appears from the trial court's comments that it did not include the matter of Amoroso visiting Pfrang's neighbor.

Toward the end of the hearing on September 5, 2023, the court noted that at the previous session Pfrang had made the accusation that Amoroso had violated the temporary restraining order by visiting her neighbor's home and had submitted a video recording to prove it. The trial court reviewed that videorecording and did not find a violation of the temporary restraining order. Since we do not have that videorecording or the restraining order, we have no basis on which to second-guess the court's decision.

DISPOSITION

The order denying the request for a restraining order is affirmed. Respondent to recover costs on appeal.

SANCHEZ, ACTING P. J.

WE CONCUR:

GOODING, J.

SCOTT, J.