Filed 8/24/21  City of Claremont v. Sandblossom CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| CITY OF CLAREMONT,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>SANDBLOSSOM, LLC,<br><br>　　　Defendant and Appellant. | B304298<br><br>(Los Angeles County<br>Super. Ct. No. 19PSCP00027) |

————————————

APPEAL from an order of the Superior Court of Los Angeles County, Peter A. Hernandez, Judge.  Affirmed.

Carlson & Nicholas and Richard A. McDonald for Defendant and Appellant.

Rutan & Tucker and Noam Duzman for Plaintiff and Respondent.

————————————

The dispute before us concerns an historic residential property (the Property) owned by appellant Sandblossom, LLC (Sandblossom) in the City of Claremont (City) which has fallen into substantial disrepair. While agreeing that the vacant house on the Property must be remediated, the parties dispute the extent of the deterioration, the pace of Sandblossom's remediation efforts, as well as the propriety of the trial court's decision to appoint a receiver to carry out remediation.

Although initially denying the City's receivership petition, the trial court monitored the situation closely over the course of more than one year, eventually concluding that Sandblossom was engaging in a pattern of obstruction and delay. Consequentially, the trial court appointed a receiver to undertake the major construction efforts needed to address the safety violations related to the underlying integrity of the house.

The trial court did not abuse its discretion by appointing a receiver to bring the Property up to the City's code requirements. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Subject Property

The Property is currently owned by Sandblossom, a single asset California limited liability company whose sole member is Alfoncina Sandoval. The Property has historical significance and is popularly known as the "Kenneth Baughman House." Due to its historical designation, the Property is subject to a January 19, 2005 "Historical Covenant and Notice of Restrictions" that is enforced by Claremont Heritage (Historical Covenant).[1]

---

[1] Claremont Heritage is a non-profit organization formed by the residents of the City in 1976 with the purpose of ensuring

In December 2013, the City opened a "code case" involving the Property's state of disrepair by sending the first of what would ultimately be seven "violation notices" to Sandblossom.

Because the "code case" approach failed to persuade Sandblossom to begin remediation, the City elevated its investigation by issuing more formal "administrative citations." The City issued Sandblossom 11 administrative citations in total.

Initially, the City's notices referenced only overgrown and dead vegetation. Beginning in 2015, however, the violation notices and administrative citations referenced substandard conditions relating to rodents and other disease vectors, the overall appearance of the Property (including an alleged attractive nuisance condition), unsecure structures, and—most concerning to the City—safety violations relating to the structural integrity of the Property itself.

During this same period, the City received complaints from the general public about the blight condition of the Property. Claremont Heritage also observed the same conditions, and contacted the City on June 15, 2016, indicating it was "extremely concerned" about the "dire" condition of the Property.

B.    **Procedural History**

On January 4, 2019, after five years of failed efforts to obtain voluntary compliance, the City filed a petition in superior court for appointment of a receiver (the Petition). The Petition listed a plethora of violations, many of which were predicated on serious structural failures and pervasive dilapidation.

---

that the City's historic architectural features are properly preserved. The Historical Covenant obligates the owner of the Property to preserve and maintain certain historical features.

Sandblossom opposed the Petition, claiming it had taken steps to address the overgrown vegetation, and had retained a construction firm and an engineering firm.

On March 6, 2019, the trial court held a hearing on the Petition, wherein Sandblossom represented that it would move forward with the necessary repairs. The trial court denied the Petition without prejudice based upon Sandblossom's explicit representations that it would repair the Property.

In a joint report filed May 10, 2019, Sandblossom complained that it could no longer promptly remediate the Property because the state had an easement over portions of it. In this same report, the City disputed Sandblossom's claim regarding the easement and pointed out Sandblossom's wholesale failure to remediate the Property in the intervening two months. The court ordered the parties to provide a compliance schedule. The City proposed 90 days, whereas Sandblossom sought more than three and one-half years to complete remediation. In a declaration attached to the proposed schedule, Sandoval conceded the Property required "major construction" in order to address the "underlying integrity of the structures underg[oing] extensive structural upgrade."

Agreeing with the City that Sandblossom's timetable was unreasonable, the trial court nevertheless provided Sandblossom with more time to propose a more reasonable estimate. In doing so, the court warned Sandblossom that "[i]f outstanding issues are not [r]esolved, the [c]ourt may appoint a [r]eceiver in this matter."

On August 5, 2019, after further delays purportedly caused by the easement, Sandblossom finally admitted there was in fact no "cloud [of] title" issue that would prevent it from commencing

4

work.  In this filing, Sandblossom now proposed an 11-month timetable.

On August 14, 2019, the trial court again declined to appoint a receiver and continued the matter to provide Sandblossom with more time "as progress [was] being made with the repairs."

On November 5, 2019, Sandblossom claimed that yet another hurdle was now impeding its work, i.e., the Historical Covenant overseen by Claremont Heritage.  The City argued this was another pretext for delay.

On November 14, 2019, the trial court concluded that Sandblossom's "problem" with the Historical Covenant was pretextual, and it invited the City to renew its Petition by means of an "ex parte" application for a receiver, reminding the parties that the Petition had been denied "without prejudice."

On January 24, 2020, the City filed its renewed request for appointment of a receiver.  Sandblossom filed an opposition.  On February 10, 2020, the trial court issued an order appointing a receiver.

Sandblossom timely appealed.

## DISCUSSION

### A.    Standard of Review

We review the trial court's order appointing a receiver for abuse of discretion.  (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 931.)  A trial court abuses its discretion only if its order " 'exceeds the bounds of reason.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

**B.      The Trial Court Plainly Acted Within Its Discretion When Appointing a Receiver**

Sandblossom urges that the trial court erred by engaging in "unauthorized supervision" of its "historic renovation" of the Property, and that it should have instead dismissed the action because Sandblossom had already remedied the problems.

The factual assertions underlying Sandblossom's dismissal argument are repeatedly and fundamentally contradicted by the record. Notably, Sandoval herself admitted in her June 7, 2019, declaration that the remediation required "major construction," including construction on the roof requiring that the "underlying integrity of the structures undergo extensive structural upgrade." She further stated that the repair work would require demolition work to address the structural integrity of the Property, including the roof, wood floors, as well as electrical problems.[2]

Sandblossom next posits that the trial court lacked jurisdiction to appoint a receiver for an "historic renovation" of a property. Pursuant to Health and Safety Code section 17920.3, a property's "nuisance" condition can be considered in determining whether a property is a "substandard building." (*Id.*, subd. (c).)[3]

---

[2] Given these admissions, we are troubled by Sandblossom's briefs, which repeatedly mischaracterize the record below.

[3] Health and Safety Code section 17920.3, entitled "Substandard building; conditions," provides in pertinent part: "Any building or portion thereof . . . in which there exists any of the following listed conditions to an extent that endangers the life, limb, health, property, safety, or welfare of the public or the occupants thereof shall be deemed and hereby is declared to be a

Health and Safety Code section 17980.6 authorizes a City to issue a notice demanding that the property owner repair or abate any condition "that violates any provisions of this part," of which Health and Safety Code section 17920.3 is included.[4]

Pursuant to Health and Safety Code section 17980.7, subdivision (c), if a property owner does not timely correct violations listed in a notice sent pursuant to Health and Safety Code section 17980.6, the City may petition the court to appoint a receiver to perform the work. (*Id.*, § 17980.7, subd. (c).)[5] The

_____

substandard building." Subdivision (c) of this section lists "[a]ny nuisance" as a basis a city may cite to invoke this code section.

[4] Health and Safety Code section 17980.6, entitled "Violations; order or notice to repair; failure to correct; remedies of [section] 17980.7 applicable," provides in pertinent part: "If any building is maintained in a manner that violates any provisions of this part . . . and the violations are so extensive and of such a nature that the health and safety of residents or the public is substantially endangered, the enforcement agency may issue an order or notice to repair or abate pursuant to this part."

[5] Health and Safety Code section 17980.7, entitled "Failure of owner to comply within a reasonable time with terms of order or notice pursuant to [section] 17980.6," provides in pertinent part: "If the owner fails to comply within a reasonable time with the terms of the order or notice issued pursuant to Section 17980.6, the following provisions shall apply . . . ." Subdivision (c) of this section provides, in pertinent part: "The enforcement agency, tenant, or tenant association or organization may seek and the court may order, the appointment of a receiver for the substandard building pursuant to this subdivision."

7

order appointing a receiver was therefore made under express statutory authorization.[6]

Sandblossom also complains that its procedural due process rights were violated after the trial court "[*found*] *the alleged violations had been corrected*, but then forced the property owner to submit status reports and attend status conferences on the progress of its construction plans and title issues without any statutory authority to do so."  (Italics added.)  As we have stated, this argument is based upon a false factual premise.

The trial court never concluded that Sandblossom had remedied the code violations.  To the contrary, the trial court invited the City to file a renewed petition *ex parte*, and granted that petition, precisely because Sandblossom had been dragging its feet and had *not* corrected the hazardous conditions over a period of more than 11 months.

All told, the City issued seven violation notices, followed by 11 administrative citations, each of which provided an opportunity to repair the Property and avoid appointment of a receiver.  Sandblossom was provided with all the process it was due.

Nor did the trial court err by using an expedited ex parte procedure to appoint a receiver after giving Sandblossom due notice of its intention to do so.  The basis for this argument is Sandblossom's contention that "the [s]uperior [c]ourt repeatedly found[ ] the Property was secure, not a nuisance, or in violation of

---

[6] Sandblossom's assertion that a receivership is a provisional remedy and cannot be sought as a stand-alone remedy is contradicted by the plain language of Health and Safety Code section 17980.7, subdivision (c).

the City's code." The trial court never made any such finding. Indeed, the record citations offered by Sandblossom in its opening brief to support this claim are merely citations to *its own declarations*—not any findings by the trial court. Moreover, the trial court's order appointing a receiver is presumed correct (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267). Sandblossom was given notice and an opportunity to respond to the City's renewed petition, which Sandblossom duly opposed by memoranda and supporting declarations. Precisely how Sandblossom was prejudiced by means of this expedited process following 11 months of litigation is not explained. (See *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [the appellant must demonstrate prejudice].)[7]

Distilled to its essence, Sandblossom takes issue with the trial court's resolution of conflicting evidence in the City's favor. However, we resolve questions of disputed evidence in favor of the prevailing party on abuse of discretion review and indulge all reasonable inferences in favor of supporting the challenged judgment or order. (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1137-1138.)

---

[7] Sandblossom's argument that a bond was required is explicitly contradicted by Code of Civil Procedure section 995.220, which provides in pertinent part: "Notwithstanding any other statute, if a statute provides for a bond in an action or proceeding, including but not limited to . . . appointment of a receiver . . . the following public entities and officers are not required to give the bond . . . ." Subdivision (b) of this section lists "[a] . . . city" as among the public entities and officials exempted from the bond requirement.

The record before the trial court demonstrates that Sandblossom took only half-hearted and minor steps (such as removing stray vegetation, hiding rotting wood by spray paint, and performing flooring work without required permits and approvals) to abate what it admitted (and the historical society agreed) were "dire" Property conditions, including "major" safety problems affecting the "integrity" of the building. Especially in light of the snail's pace of progress, the trial court acted well within its discretion.

## DISPOSITION

The order is affirmed. The City shall recover its costs on appeal.

NOT TO BE PUBLISHED

CRANDALL, J.[*]

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.