Filed 3/10/25  Dianne G. v. Hamlin CA1/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| DIANNE G.,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>BRIAN M. HAMLIN,<br><br>        Defendant and Appellant. | A170069<br><br>(Alameda County<br> Super. Ct. No. 24FL059581) |

Defendant Brian M. Hamlin appeals from a restraining order issued against him under the Elder Abuse and Dependent Adult Civil Protection Act (Elder Abuse Act; Welf. & Inst. Code, § 15600 et seq.)[1] to protect plaintiff Dianne G. and her adult daughter Roxanne Jane Mann.  We affirm.

## I.  BACKGROUND

Dianne owns a home in Oakland where she lives with Roxanne, who suffers from a traumatic brain injury.  Before these proceedings, Hamlin lived at Dianne's house part time.[2]  Hamlin is Roxanne's friend and when he

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Hamlin splits his time between Dianne's home and his place in Berkeley.

1

was at Dianne's house he would support and engage with Roxanne and assist with her care. Roxanne has a limited conservatorship for which Dianne, Hamlin, and Roxanne's uncle are co-conservators. Dianne had previously appointed Hamlin as her power of attorney and trustee of her trust upon her death.[3]

In January 2024, Dianne, then 70 years old, requested a restraining order against Hamlin pursuant to the Elder Abuse Act seeking protection for herself and Roxanne. According to the request, on January 8, 2024, Hamlin threw open her bedroom door and screamed at her because she brewed coffee at 5:00 a.m. She told him to leave and he refused, twice. He sat down in the doorway, blocking the only exit from the bedroom, and she called 911. She was "badly mentally shaken up." (Capitalization omitted.) Dianne requested personal conduct orders, 100-yard stay-away orders, a move-out order, and possession and protection of two dogs.

The trial court issued a temporary restraining order which included personal conduct orders, stay-away orders requiring Hamlin to stay 100 yards away from Dianne and Roxanne, and a move-out order. The order prohibited Hamlin from possessing firearms and granted Dianne possession of the dogs. The court set a hearing on the request for a restraining order.

Prior to the hearing, Hamlin filed a response to the request for a restraining order.[4] He did not deny Dianne's description of the January incident. Instead, he asserted his actions were justified or excused by Roxanne's "psychotic break" event. Over the recent holiday season, he

---

[3] Dianne revoked her appointment of Hamlin as power of attorney after the incident.

[4] Dianne and Hamlin were self-represented in the trial court proceedings.

explained, the relations in the home deteriorated. Roxanne became increasingly agitated, she verbally attacked them, and she ate less food and smoked many cigarettes while drinking coffee, growing increasingly thin. They all lost sleep.

According to Hamlin, on the morning of the incident, Roxanne had a "psychotic break event" and hysterically sobbed and wailed as she walked towards the back door to smoke. He was overwhelmed seeing Roxanne's emotional agony and he panicked. He walked to the kitchen and then walked to Dianne's bedroom, put his hand on the door, and yelled at Dianne about Roxanne having coffee. Dianne shouted at him to get out. He said " 'No!' " and then sat down on the floor with his back to Dianne, and seconds later he got up and walked out of the doorway. Over one hour later, while he and Dianne spoke, Dianne asked if he wanted her to have a restraining order put on him, and she called the police. He never physically threatened Dianne. There was no history or pattern of behavior in their house that warranted a restraining order. Hamlin stated that a doctor had informed Dianne she was at risk of dementia; Dianne was under duress from Roxanne's mental illness and verbal abuse; and she made a false filing in requesting the restraining order in retaliation for him making a derogatory comment about her being a woman. Hamlin also claimed the event was tied to an assault six years prior, when Dianne's schizophrenic son attacked her with a knife in the home.

The trial court conducted the hearing on February 1, 2024. Dianne testified about the January incident: While she was in her bedroom at the computer around 5:00 a.m., Hamlin opened the door, burst into the room, and screamed at her about making coffee so early. He stated Roxanne had a deteriorating condition and should not drink coffee that early in the morning. Hamlin stood inside the room in the doorway and when she asked him to get

3

out and go to his place in Berkeley, he refused. He sat down in her room at the threshold of the door, which was the only exit out of her room. She called 911 and requested to have Hamlin removed from her home, but when the police arrived they advised her they could not help her. Hamlin got up a few minutes after she called the police. When the court asked Dianne how she felt when Hamlin yelled at her and sat in her doorway, she testified that Hamlin is quirky, has some defiant traits, and "when he makes up his mind it's made up. And I didn't know when to get up and leave." He was "so different" and Dianne "had never seen him like that before." Dianne had previously made coffee at that time, and Hamlin had not yelled at her about it.

Dianne testified that after the January incident, Hamlin had not engaged in any acts of physical violence towards her, made any threats of violence, nor done anything that made her fear for her safety. Other than this incident, Hamlin had never done anything that made her fear for her safety. The trial court asked, "You still feel like you need a restraining order against Mr. Hamlin[?]" Dianne replied, "I don't need a permanent restraining order. I really need a move-out order."

At the hearing, Hamlin mainly relied on his written response. He also testified to the following: Hamlin admitted that he raised his voice to Dianne. He "panicked" because Roxanne was having a "psychotic schizophrenic event," and he had been awake for only minutes and entered into this "terrible situation." He awoke after 5:00 a.m. to Roxanne loudly crying and screaming, as if she was "agonized with wailing tears." He had never experienced this type of event. Roxanne had been having issues—she had lost weight and was a heavy cigarette smoker. He yelled at Dianne because he was upset and he panicked. The situation seemed urgent and he

4

did not know what to do.  He yelled about Dianne making coffee for Roxanne because he did not know why Dianne would give stimulants to someone having "an acute schizophrenic break" who is underweight and not eating.

Hamlin testified that the first year Dianne owned the home, traumatic things happened.  After that, they pulled together to come up with a support plan for Dianne after she was injured.  They worked together as a team for five to six years.  But things changed over the prior two months, which he explained in his written submissions, and Roxanne had setbacks for her physical and mental health.

On further questioning from the trial court, Dianne testified:  The morning of the incident she was not aware of Roxanne wailing and crying.  But Roxanne "does that some[]times."  Roxanne had "showed her first psychotic behavior" on December 30.  It was different than the normal effects of her brain injury.  Roxanne quickly saw a psychiatrist and at the time of the hearing she was on two drugs—an antipsychotic and a mood stabilizer.

At the conclusion of the hearing, the trial court granted a two-year restraining order against Hamlin, protecting both Dianne and Roxanne.  The court ordered Hamlin to not physically abuse, financially abuse, intimidate, molest, attack, threaten, harass, or disturb the protected parties; to not contact them; to stay at least 100 yards away; and the move-out order remained in effect.  The order also imposed firearms restrictions and protected the two dogs.

## II. DISCUSSION

The Elder Abuse Act permits a trial court to issue a protective order "for the purpose of preventing a recurrence of abuse, if a declaration shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse of the petitioning elder."  (§ 15657.03, subd. (c).)  An "[e]lder" is a California

5

resident, age 65 years or older.  (§ 15610.27.)  Elder abuse includes "[p]hysical abuse, neglect, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering." (§ 15610.07, subd. (a)(1).)  This case involves allegations of treatment causing mental suffering.  "Mental suffering" is defined, in relevant part, as "fear, agitation, confusion, severe depression, or other forms of serious emotional distress that is brought about by forms of intimidating behavior, threats, [or] harassment."  (§ 15610.53.)

Upon a sufficient showing, the court may issue a protective order "enjoining a party from abusing, intimidating, molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, harassing, telephoning . . . , contacting, . . . or coming within a specified distance of, or disturbing the peace of, the petitioner" and, "on a showing of good cause, of other named family or household members."  (§ 15657.03, subd. (b)(5)(A).)  In addition, the court may issue "an order excluding a person from a residence or dwelling if the court finds that physical or emotional harm would otherwise result to the petitioner, [or] other named family or household member[s]."  (*Id.*, subd. (h); see also *id.*, subd. (b)(5)(B).)  A trial court makes findings in this context based on a preponderance of the evidence standard.  (*Bookout v. Nielsen* (2007) 155 Cal.App.4th 1131, 1139 (*Bookout*).)  A restraining order may be issued based on a single act of past abuse and does not require any showing that the wrongful act(s) will be continued or repeated.  (§ 15657.03, subd. (c); *Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 137 (*Gdowski*).)

We review the trial court's issuance of a protective order under the Elder Abuse Act for abuse of discretion and its factual findings for substantial evidence.  (*Bookout*, *supra*, 155 Cal.App.4th at p. 1137.)  Thus, "[w]e resolve all conflicts in the evidence in favor of respondent, the

6

prevailing party, and indulge all legitimate and reasonable inferences in favor of upholding the trial court's findings." (*Id.* at pp. 1137–1138.) We disregard contrary evidence and we do not reweigh the evidence or redetermine the credibility of the witnesses. (See *Harley-Davidson, Inc. v. Franchise Tax Bd.* (2015) 237 Cal.App.4th 193, 213.) "[W]e will only find an abuse of discretion when the trial court exceeds the bounds of reason or disregards the uncontradicted evidence." (*Bookout*, at p. 1140.) " ' "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1339.) The party challenging the restraining order bears the burden of showing an abuse of discretion by the trial court. (*Bookout*, at p. 1140.)

Dianne did not file a respondent's brief. As a result, we base our decision on the record and Hamlin's opening brief. (Cal. Rules of Court, rule 8.220(a)(2); see also *Griffin v. The Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 505 ["if a respondent in a civil case files no brief at all, we still examine the record to see if it supports any claims of error made by the appellant"].)

Hamlin has not met his burden of demonstrating the trial court abused its discretion in issuing the restraining order. In his opening brief, he discusses neither the statutory requirements for issuance of an elder abuse restraining order nor the standard of review on appeal. He makes no argument that the trial court's findings in granting the restraining order were not supported by substantial evidence or that the trial court abused its discretion. We would be justified in denying Hamlin's appeal based on these defects. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'We are not bound to develop appellants' arguments for them.' "];

7

*Kinsella v. Kinsella* (2020) 45 Cal.App.5th 442, 464 ["Where an appellant fails to present argument or legal authority, he or she forfeits appellate consideration of the issue."]; *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 ["When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."]; Cal. Rules of Court, rule 8.204(a)(1)(B) [brief must state "each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority"].)[5]

In any event, substantial evidence in the record supports the trial court's issuance of the restraining order. Dianne testified that Hamlin opened the door to her bedroom, burst into the room and screamed at her, refused to leave when she asked him to, and sat on the floor in the doorway, blocking the sole exit. In her request for the restraining order, Dianne declared under penalty of perjury that she was "badly mentally shaken up." (Capitalization omitted.) This single incident is sufficient to issue a restraining order. (See § 15657.03, subd. (c); *Gdowski, supra,* 175 Cal.App.4th at p. 137.)

We are unpersuaded by the contentions we can glean from Hamlin's opening brief. He argues the trial court erred because Dianne testified that no restraining order was needed. At the hearing, Dianne testified that she did not "need a permanent restraining order," she "need[ed] a move-out

---

[5] As in the trial court, Hamlin is self-represented on appeal. In both courts, the procedural rules apply equally to a self-represented party and to a party represented by counsel. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.) A self -represented party " 'is entitled to the same, but no greater, consideration than other litigants and attorneys.' " (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.)

order." She also testified that since she had filed her petition, Hamlin had not been physically violent, threatened violence, or done anything to make her fear for her safety. We acknowledge Dianne's testimony. But we cannot conclude that the court abused its discretion. "[T]he question before us is not whether we would have reached a different conclusion had we been the triers of fact. Rather, our review is confined to whether any substantial evidence supports the trial court's findings." (*Newman v. Casey* (2024) 99 Cal.App.5th 359, 378.) The statutory language is clear. Only evidence of "a past act or acts of abuse" of the elder is required for issuance of an elder abuse restraining order; no "particularized showing that the wrongful acts will be continued or repeated" is necessary. (§ 15657.03, subd. (c); *Gdowski, supra*, 175 Cal.App.4th at p. 137.)

To the extent we may construe Hamlin's brief as arguing that the trial court should have imposed a less restrictive order, such as a move-out order only, we reject his contention. Nothing in the Elder Abuse Act requires this. Once the trial court found that Hamlin had abused Dianne, Dianne was entitled to a restraining order. (See § 15657.03, subds. (a)(1), (c).) Hamlin did not demonstrate that the scope of the restraining order constituted an abuse of the court's discretion.

We reject Hamlin's one-sentence argument that the evidence does not meet the definition of harassment under Code of Civil Procedure section 527.6. That statute dictates civil harassment restraining orders. (See Code Civ. Proc., § 527.6.) Here, the proceeding is governed by the Elder Abuse Act which requires that the elder suffer "abuse" to issue a restraining order. (§ 15657.03, subd. (a)(1).) Abuse is not limited to harassment. (See § 15610.07.)

9

Finally, we reject Hamlin's assertion that Dianne made "false claims" and "misleading statements" in her request for the restraining order. Hamlin does not support his stance with citation to the record or legal authority. Further, in his written response, Hamlin did not deny Dianne's allegations. Additionally, Hamlin states that he was harmed by issuance of the restraining order. He fails to demonstrate that any alleged harm—which is unsupported by substantive argument or citation to legal authority or the record—is relevant to our review.

## III.  DISPOSITION

The February 1, 2024 order is affirmed. The parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

LANGHORNE WILSON, J.

WE CONCUR:


HUMES, P. J.


BANKE, J.


A170069
*Dianne G. v. Hamlin*

11